[No. 26058. Department One. April 14, 1936.]

THE STATE OF WASHINGTON, *Respondent*, v. LEO HALL, *Appellant*, PEGGY PETERSON PAULOS, *Defendant*.[1]

[1]Reported in 56 P. (2d) 715.

*Everett O. Butts,* for appellant.
*R. W. Miller,* for respondent.

MITCHELL, J.—About April 1, 1934, the officers of Kitsap county discovered that a number of persons had been murdered at the home of Frank Flieder, in that county. Upon official investigation and autopsies, it was found that six persons had been killed; two of whom, Mrs. Eugene A. Chenevert and Magnus Jordan, died from gunshot wounds, and the other four, Mr. and Mrs. Frank Flieder, Fred Balcom, and Eugene A. Chenevert, died each from hammer blows upon the head.

The house was found to be in a horrible condition. The walls, ceilings and floors of all the rooms on the ground floor were spattered with blood. Dressers and other kinds of furniture had been ransacked, and papers and other contents scattered upon the floors. All of the victims had been bound and blindfolded. It was evident that the murders had been committed several days before the discovery of the crime, and that the perpetrators remained in the house a number of hours after the crime was committed.

In October, 1935, Peggy Peterson Paulos, spoken of hereinafter as Mrs. Paulos, made a voluntary confession to her private attorney concerning the crime, and then made and signed a written confession in the prosecuting attorney's office, in which confessions she implicated Leo Hall, stating that she was forced to take part under duress and threats of Leo Hall, who compelled her to accompany him to the scene of the crime. Shortly after her confession, she and Leo Hall were arrested and jointly charged with the crime of murder in the first degree.

The statement of the acts constituting the offense, as set out in the amended information upon which the trial was had, is as follows:

"That on or about the 28th day of March, 1934, in the county of Kitsap, state of Washington, the said defendants, Leo Hall and Peggy Peterson Paulos, then and there being with intent to commit a crime, did commit the crime of murder in the first degree, in this, that they, the said defendants, while engaged in the commission of robbery and with a premeditated design to effect the death of a human being, did wilfully, unlawfully and feloniously strike at, beat and wound the body of Eugene A. Chenevert with a blunt instrument, namely a hammer, said hammer then and there being held and wielded by the said Leo Hall, mortally wounding the said Eugene A. Chenevert, of which mortal wounds the said Eugene A. Chenevert

languished and died in said county and state on or about the said 28th day of March, 1934, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the state of Washington.''

Upon arraignment, Leo Hall demurred to the amended information, on the ground that more than one crime is charged. The demurrer was overruled. He pled not guilty, and also interposed the defense of an alibi. Mrs. Paulos pled not guilty.

Throughout all the proceedings, including arraignment, entry of the pleas and trial, the state was represented by the prosecuting attorney and a deputy or associate; Leo Hall was represented by his attorney, and Mrs. Paulos was represented by her separate attorney. In due time before trial, Leo Hall filed a motion for a separate trial, which motion was denied. The jury returned a verdict finding Leo Hall guilty of murder in the first degree, as charged in the information, and returned a special verdict that the death penalty be inflicted upon him. Upon the denial of a motion for a new trial, judgment and sentence were entered against him upon the verdicts. He has appealed.

Without assigning error upon the matter or discussing it under any claim of error presented in the brief, and without being clear and definite, counsel for appellant seems to complain of an incident connected with the opening statement of Mrs. Paulos' attorney to the jury. In support of her claim of fear of Leo Hall, her attorney commenced to speak of her understanding of Leo Hall having been connected with some other crime. An objection was made before the statement was completed, and the objection was promptly sustained. Counsel for appellant then asked the court to instruct the jury to disregard the statement. The

court did so at once, as requested, and that closed and ended the matter.

The first assignment is that the amended information charges two crimes, robbery and the premeditated killing of Eugene A. Chenevert, and that the court erred in denying appellant's demurrer to the amended information.

Rem. Rev. Stat., § 2392 [P. C. § 8997], says:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

"1. With a premeditated design to effect the death of the person killed, or of another; or, . . .

"3. Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; . . ."

The amended information charges but one crime. It says that the defendant

". . . did commit the crime of murder in the first degree, . . . while engaged in the commission of robbery and with a premeditated design to effect the death of a human being, etc."

There is no good reason, in our opinion, to depart from the current of authority and hold the amended pleading in this case bad when, most reasonably, it can and must be said that it alleges that the crime complained of was but a single act or transaction, all committed at one and the same time and place, in violation of the law against murder in the first degree, simply because the act or transaction responds to two statutory ways of committing that crime. The ways or means mentioned were merely descriptions of the particular crime of murder in the first degree charged to have been committed at that time. Whether the crime was committed by either or both ways, the penalty is precisely the same. These views and reasons

are in harmony with *State v. Laws,* 61 Wash. 533, 112 Pac. 488; *State v. Makovsky,* 67 Wash. 7, 120 Pac. 513; and *Sweek v. People,* 85 Colo. 479, 277 Pac. 1, which latter case cites, with approval, our Washington cases just referred to.

In the Colorado case, it was pertinently remarked that the ''subtleties and hypertechnical refinements,'' tended to be encouraged by former decisions in criminal cases, no longer prevailed, because of statutory provisions for testing the sufficiency of indictments and informations set out in the opinion, and which, it appears, are similar to our statutes, Rem. Rev. Stat., §§ 2065 and 2066 [P. C. §§ 9281, 9282], the latter one of which says:

''No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of any of the following matters, which were formerly deemed defects or imperfections:— . . .

''4. For any surplusage or repugnant allegation, or for any repetition, when there is sufficient matter alleged to indicate clearly the offense and the person charged; nor

''5. For any other matter which was formerly deemed a defect or imperfection, but which does not tend to the prejudice of the substantial rights of the defendant upon the merits.''

The form of the amended information, in the respect complained of, did not tend in any way to the prejudice of the substantial rights of the appellant, upon the merits. There was but one crime charged; the demurrer was properly overruled.

■ The second assignment, the one upon which appellant mostly relies, is that the court erred in denying appellant's motion for a separate trial.

The motion was supported only by the affidavit of appellant's attorney, in substance and effect as follows: That affiant had investigated the facts and cir-

cumstances in connection with the crime; that defendant Mrs. Paulos had confessed and stated that she participated in the crime charged, saying that Leo Hall is guilty of the crime and that she will so testify at the time of his trial; that she has stated that the parts performed by her were done under duress and threats of Leo Hall, and that she will so testify. That such statements made by her and also her attorney have been widely published and circulated by various newspapers in King and Kitsap counties. That Leo Hall's defense will be a complete denial of her story, and that their interests are so antagonistic that Leo Hall cannot have a fair trial if tried at the same time with her; that affiant believes that, if the trial be joint, her attorney will attempt to influence the jury and court in the truth of her story and the falsity of his story; and that she, acting under the advice of her attorney, has declined to talk with affiant.

Prior to 1919, a defendant, jointly indicted or informed against with another, could demand a separate trial as a matter of right. That year the law was changed, Laws of 1919, chapter 16, p. 42, Rem. Rev. Stat., § 2161 [P. C. § 9377], by which the right to a separate trial was placed in the discretion of the trial judge; and, while a showing in support of a motion for a separate trial may aid the trial judge in the exercise of his discretion, the showing neither adds to nor limits the power of the court.

"The question is still one on which the court may exercise its discretion, and if the manner of its exercise is reviewable at all, it is only so for manifest abuse." *State v. Clark,* 156 Wash. 47, 286 Pac. 69, 85 A. L. R. 502; *State v. Bashor,* 175 Wash. 230, 27 P. (2d) 121.

In the showing made here, there was no suggestion that Mrs. Paulos would repudiate or modify her confession in any particular or hesitate or refuse to tes-

tify frankly and fairly whether or not a separate trial was given to Leo Hall.

As to the newspaper notoriety of the crime and the confession of Mrs. Paulos, we are at a disadvantage in this review, because not one of the newspaper articles is attached, nor the contents of any given. Nor does it appear in what manner the same could or would affect the result if a separate trial were granted, merely the conclusion of the affiant is asserted. The motion was disposed of by the resident judge, who, of course, in a general way understood the local situation with reference to those matters. The publicity given of the crime and Mrs. Paulos' confession, whatever the extent of it, seems not to have prevented the securing of a jury entirely satisfactory to all the parties in the joint trial.

As to affiant's expressed belief that, if the trial be joint, Mrs. Paulos' attorney would attempt to influence the jury and court against Leo Hall's defense of not guilty and an alibi, it may be said that appellant's counsel has prepared, on account of the appeal, an excellent, and apparently full and complete, abstract of the testimony and trial, to which the prosecution has not filed any amendments or exceptions, from which it appears that nothing substantial was done or attempted by Mrs. Paulos or her attorney to justify any such belief on the part of appellant's counsel, or that, in any way, was inconsistent with the full and frank disclosure of the facts and circumstances of the crime. We see nothing in the showing here made which would even indicate that a denial of the motion would or did amount to an abuse of discretion.

Assignments 3 and 4 are:

"The court erred in its admission and refusal of testimony as hereinafter pointed out;" and

"The court erred in permitting Mrs. Paulos' attorney to examine any other witness than her."

These two assignments are argued together by appellant's counsel. The evidence admitted or refused, to which these assignments appear to be addressed, is not set out in the brief; only references to pages of the statement of facts and the abstract are given, which are supposed to show the matters complained of. We have examined those pages of the record and find as follows:

■ (1) In the cross-examination of Mrs. Paulos, appellant's counsel asked, as an original matter in connection with her testimony, if she and her husband had not been *accused,* not *convicted,* of burglary on another occasion. An objection that it was immaterial and irrelevant was sustained.

■ (2) One John Staubitz was called and examined as a witness on behalf of the appellant. Mrs. Paulos' attorney asked leave at the proper time for permission to ask the witness questions. No one objected. The questions and answers appear on pages 862, 863, 864, 865, and 866 of the statement of facts, according to appellant's references in his printed brief. Not only was there no objection to the cross-examination, but there was no objection on behalf of the appellant to any individual question propounded in the cross-examination, except one that related to a manifestly unimportant matter, and that objection was sustained.

■ (3) Page 892 of the statement of facts is cited. It appears that one H. G. Zimmerman was called and testified in support of appellant's alibi, to the effect, in substance, that he, the witness, waited on Mr. and Mrs. Flieder in a meat market in Bremerton on Thursday, March 29th, the day after it was charged, and the state's proof tended to show, the

crime was committed. One of the attorneys for the state cross-examined the witness, testing his memory as to the date, and this was followed by a few questions of the same sort by Mrs. Paulos' attorney. The cross-examination in no way changed the testimony of the witness. This circumstance in the trial was trivial and could not have caused any prejudice or error.

(4) Next, appellant's brief refers to page 954 of the statement of facts, wherein one Bob Hall testified in support of the appellant's alibi. The situation in this instance is precisely similar in kind and result to that in the case of the witness Zimmerman, just above discussed.

(5) The next citation refers to page 1010 of the statement of facts. This must be a mistake. It contains no objection or protest of any kind by or at the instance of the appellant.

(6) The next reference is to page 551 of the statement of facts. It is claimed error was committed in admitting in evidence the written confession of Mrs. Paulos, which consists of twelve and one-half loosely typewritten pages in the form of questions and answers, signed by her. She had testified rather fully to the facts and circumstances connected with the crime at the call of the state and also upon being examined by her own attorney. Such testimony had been given without reference to any confession.

Appellant's attorney, in the midst of a lengthy cross-examination, demanded that the state produce her confession. The state objected to its being gone into unless the whole of it was admitted. At this juncture, the jury was retired for a discussion of the matter to the court. The court stated that, at that time, the confession was not admissible for any purpose, but advised counsel for appellant that, if he

went into it, the full confession would probably have to be admitted, including anything said in it about the appellant. The state's attorney at that point stated that, if that subject was opened up, he would offer the whole confession in evidence. Then appellant's counsel answered: "I am going to use her confession to impeach her with." Again, the court, by way of warning, stated to appellant's counsel:

"I just want to suggest to you, so that there will be no misunderstanding, if you attempt to impeach her on any particular item of her confession, in my opinion, that makes her entire confession admissible for the purpose of bearing on the credibility of her testimony."

The written confession was delivered by the state to appellant's attorney, according to demand. The jury was called into the courtroom, Mrs. Paulos continuing on the witness stand. Then the following occurred:

"Mr. Butts: [having the written confession in his possession] Will you mark that as an exhibit? The Court: Defendant's —? The Clerk: Defendant's '7'. Mr Butts: Defendant's '7'."

Thereupon, continuing the cross-examination of Mrs. Paulos and for the avowed purpose of impeachment, appellant's counsel asked her seventeen questions, each containing quotations from or portions of the written confession held in counsel's hands, concluding each of such present questions with an inquiry "Did you make that answer?" or "Is that what happened?" or "Now, was that true?" or some inquiry of similar import. The quotations from the written confession consisted of questions and answers, the quotations containing from a few questions and answers, to as many as twenty-three of each.

At the conclusion of appellant's cross-examination of Mrs. Paulos, the written confession was offered in

evidence, not by Mrs. Paulos' attorney, but by the prosecuting attorney, as follows:

"MR. GREENWOOD [representing the state] : I would like to offer this exhibit, this full confession. MR. BUTTS: Objected to as irrelevant, incompetent, and immaterial. THE COURT: Overruled. It may be admitted. Defendant's '7'."

Clearly, in our opinion, appellant cannot predicate error on the admission of the confession in evidence.

The fifth assignment is that:

"The court erred in failing to give defendant's requested instructions as hereinafter pointed out."

No such requested instructions are set out in the brief, nor are any of that kind brought up in the record.

The sixth assignment of error is based on the refusal to grant appellant's motion for a new trial. Nothing new, above the assignments already discussed, is advanced in the argument on this assignment, except, as we understand, it is urged the court abused its discretion in denying a new trial because the testimony of Mrs. Paulos is not credible as against all the testimony of the disinterested witnesses on behalf of the appellant. This involves the facts in the case. There was abundant evidence, together with corroborating facts and circumstances, which the jury were at liberty to believe, and manifestly did believe, to justify the verdict, notwithstanding the testimony of the witnesses called by and on behalf of the appellant. These were peculiarly matters of fact for the jury to determine. The trial judge was unwilling to disturb the verdict, and we are satisfied there was no error in this respect.

The seventh assignment is that:

"The court erred in refusing to give defendant additional time to file affidavits."

This assignment is not argued on behalf of appellant, nor in any other manner referred to in his brief; nor do we find anything in the record to which it relates.

The eighth and final assignment is that:

"The court erred in passing judgment and sentence on Leo Hall."

This assignment is not argued and requires no separate, special consideration.

Upon consideration of the whole record, it appears that the appellant had a fair trial.

Judgment affirmed.

MILLARD, C. J., TOLMAN, STEINERT, and GERAGHTY, JJ., concur.

