[No. 28807. Department One. January 7, 1943.]

THE STATE OF WASHINGTON, *Respondent*, v. CHESTER MONTGOMERY, *Appellant*.[1]

[1]Reported in 132 P. (2d) 720.

*Wilmot W. Garvin* and *Roy C. Fox,* for appellant.

*C. C. Quackenbush* and *Leslie M. Carroll,* for respondent.

MILLARD, J.—Defendant was, by information, charged with the crime of murder in the first degree. The pertinent portion of the information reads as follows:

"Comes now the Prosecuting Attorney in and for Spokane County, Washington, and charges the defend-

ant Chester Montgomery, alias Ben Webbs, with the crime of Murder in the First Degree, committed as follows:

"That the said defendant, Chester Montgomery, alias Ben Webbs, in the County of Spokane, State of Washington, on or about the 9th day of June, 1940, then and there being, did then and there willfully, unlawfully, feloniously and maliciously, without excuse or justification, and with a premeditated design to effect the death of one Jessie Sellers, and while engaged in the perpetration of and attempt to perpetrate the crimes of Rape and Robbery, kill and murder Jessie Sellers in a manner and by means unknown to the Prosecuting Attorney."

Trial to a jury resulted in a verdict finding defendant guilty, as charged in the information, and that the death penalty shall be inflicted upon him. Defendant has appealed from the judgment and sentence entered against him upon the verdict.

█ Counsel for appellant assigns as error admission of evidence to establish the fact that Jessie Sellers was a human being. It is argued that our statute defines the crime of murder in the first degree (Rem. Rev. Stat., § 2392 [P. C. § 8997]) as "the killing of a human being, . . ." Therefore the omission from the information of the words "human being," was the omission of descriptive words essential to define the crime and which must necessarily be proved to establish the crime; from which it follows that evidence was inadmissible to establish a point not alleged.

The question is foreclosed in this state. We held in *State v. Day*, 4 Wash. 104, 29 Pac. 984, that "It was never necessary to aver in an indictment for homicide that the person killed was a human being."

The criminal law has outgrown the technicality (objection that it does not appear upon the face of the information that Jessie Sellers was a human being)

urged by appellant. The general charge in the information is the crime of murder in the first degree. The information avers, after specifying the time and place of the crime and its commission while engaged in the perpetration of, and attempt to perpetrate, the crimes of rape and robbery, that appellant did feloniously and premeditatedly kill and "murder" Jessie Sellers in a manner and by means unknown to the prosecuting attorney. The use of the word "murder" implied that a rational being was the subject of the crime, and the use of an ordinary given name and surname raised the presumption that "human being" was meant. An information, in language not materially dissimilar from the information in the case at bar was held, in *State v. Gondeiro*, 82 Mont. 530, 268 Pac. 507, unobjectionable for failure to allege that the person killed was a human being. See, also, *People v. Gilbert*, 199 N. Y. 10, 92 N. E. 85.

Counsel for appellant next contend that, as the information charged that the manner and means by which Jessie Sellers came to her death were unknown to the prosecuting attorney, the court erred in permitting, over appellant's objection, evidence as to the manner and means of death of the victim. It is insisted that, by the very first witness who testified on behalf of the state, it was disclosed that at least the manner, if not the means, of the victim's death was known to the prosecuting attorney immediately after the body was discovered, which was approximately two years prior to the time that the information was filed; that, while it is proper, where it is a fact, for the prosecuting attorney in drawing an information to allege that certain material facts are unknown, the prosecuting attorney may not make such allegations in the information unless the same are true.

The deputy county coroner, a physician, testified that the cause of death was a crushed chest and a fractured skull, which facts were ascertained by the deputy coroner in an autopsy performed on or about the date of the discovery of the body of the victim. Jessie Sellers was killed in the Victoria hotel by appellant the night of June 9, 1940. Her body was thrown into the pit of an elevator shaft in that building, where it lay until discovered June 14, 1940. The deputy county coroner testified that the body was decomposed, swollen, markedly discolored, and all kinds of discolorations over all parts of the body. The fourth, fifth, sixth, seventh, eighth, and ninth ribs were broken on one side of her body and the third, fourth, fifth, sixth, seventh, eighth, and ninth ribs on the other side of her body were broken. Her skull was fractured on both sides. The mutilations of the head and torso of the victim were such that it would have been impossible for any one to have accurately stated what weapon was used or what manner of means the appellant employed to destroy the life of his victim.

The weight of authority is to the effect that, if the mode or manner of producing death is uncertain, it is sufficient to allege that a murder was committed in some way and by some means, instruments and weapons to the prosecuting attorney unknown. See 30 C. J. 101; 26 Am. Jur. 337-339; *State v. Nielson*, 38 Mont. 451, 100 Pac. 229; *State v. Farnan*, 82 Ore. 211, 161 Pac. 417, Ann. Cas. 1918A, 318.

Counsel for appellant next assign as error introduction into evidence, over objection, of a pair of scissors and a blackjack. It is argued that there is an absence of evidence that the death of the victim was caused by stabbing; and that, while some of the wounds on the head of the victim appeared to have

been inflicted with a blunt instrument of that character, the evidence of the state is conclusive that the blackjack was not in the possesssion of appellant at the time of the death of Jessie Sellers.

Undoubtedly the blackjack was the property of appellant, who habitually carried that weapon in his overcoat pocket. The Japanese manager of the Idaho hotel, where the appellant lodged, testified that subsequent to the murder he found the blackjack in a quantity of soiled baby clothing in the laundry room of the hotel. Whether the blackjack was in clothing taken from room nineteen, where appellant did not reside, or whether appellant had that weapon at the time he committed the murder, was a question of fact for the jury. There was sufficient evidence, even if the blackjack was not bloodstained when found, to warrant the jury in inferring that it was one of the instruments used by appellant in committing the murder. The objection to the reception of the blackjack in evidence goes to the weight of such evidence rather than to its admissibility. It was for the jury to consider, with other evidence, whether the blackjack was one of the weapons used by appellant in committing the crime.

While the state did not show that the scissors, which were found at the scene of the murder, were used by appellant in committing the crime, the admission of the scissors, which were probably used to cut the clothing from the victim's body, did not constitute reversible error. Such evidence was of little, if any, persuasive force in establishing appellant's guilt, and the admission in evidence of the scissors could not have misled the jury.

Counsel for appellant next contend that the state failed to prove the *corpus delicti*. It is argued that, while the state identified certain clothing as articles of wearing apparel of Jessie Sellers, the

corpse was never identified as the body of Jessie Sellers.

Mrs. Sellers, who resided at the Fairmont hotel, and was last seen at that hotel on Sunday evening, June 9, 1940, contemplated purchasing a beauty parlor in the basement of the Victoria hotel. About ten o'clock the evening of June 9, 1940, she received a telephone call from some man, requesting her to come to the Victoria hotel. Undoubtedly, the man was appellant, who was employed in the Victoria hotel as porter and shoeshine boy and had evident apparent interest in obtaining employment from Mrs. Sellers.

A witness, who was with other persons in the room of Mrs. Sellers when she received the telephone call, testified that, in answer to the call, Mrs. Sellers immediately departed from the room; that he remained in the room until four o'clock the next morning but that he had not seen Mrs. Sellers since her departure from her room about ten p. m., June 9, 1940. He testified that Mrs. Sellers wore glasses and that she wore a black and white polka dot dress with white spots, when she left the Fairmont hotel. When shown the belt of that dress, he testified that it was that kind of material.

A clerk at the Fairmont hotel testified that he listened in on the telephone call and heard a male voice request Mrs. Sellers to come to the hotel, where she was murdered. He observed, as she left the Fairmont hotel, to which she never returned, that Mrs. Sellers was wearing a polka dot dress like that described by the other witnesses.

A daughter of the deceased identified a picture of her mother taken just prior to her death. She testified that she last saw her mother the night of June 8, 1940. That her mother weighed about one hundred twenty-five pounds, wore glasses, had a polka dot dress, and that she had a back ailment which required her to wear

a special corset. She stated that she would recognize the corset. She was shown the corset which was taken from the body of the victim, and the witness testified that the corset was that of the deceased mother of the witness. She identified the polka dot dress, but of course could not recognize the face, because of its condition, as the face of her mother. She identified the belt of her mother's polka dot dress, which belt was recovered by the state from the personal property of the victim when her belongings were gathered together at the hotel. The daughter also identified a brooch from the neck of the dress of her mother. Other witnesses testified that this pin was picked up at the hotel where the lady was murdered.

Appellant, in his confession, when apprehended in Michigan eighteen months after commission of the crime, identified a photograph of Mrs. Sellers as being a photograph of the woman who came to the Victoria hotel (where she was murdered) June 9, 1940. His confession, admissions, and testimony are, substantially, as follows:

Mrs. Sellers went to the Victoria hotel June 9, 1940, where she was murdered by Willie Thomas, who threw her body into the elevator pit of that hotel. He was forced by Willie Thomas and Bill Johnson, one of whom induced the victim to come to the hotel, to accompany them for the purpose of robbing Mrs. Sellers. Willie Thomas hit her with a blackjack (this weapon belonged to appellant) which was admitted in evidence. Johnson stood silently by, while appellant hid behind a curtain from whence he could see and hear all that transpired. He "heard Willie Thomas hit her, I heard the blows, and I looked around the curtain and I could see him hitting her." He heard the noise of clothing being ripped off the victim before Willie Thomas commenced to strike her with the black-

jack. Willie Thomas gave the victim's clothing to appellant for the purpose of burning same, but they were not thus destroyed as there was no fire in the furnace. Appellant gave a mop, bucket, and water to Willie Thomas, who mopped the blood from the floor, in which gruesome task he was assisted by one Bill Johnson.

It is unnecessary to further detail other evidence and appellant's testimony. Out of appellant's own mouth he not only convicts himself of murder while endeavoring to charge others with commission of the crime, but he identifies the body of his victim.

We are cognizant of our opinion in *State v. Anderson*, 10 Wn. (2d) 167, 116 P. (2d) 346, in which we stated that, while the *corpus delicti* may not be established by the confessions and admissions of a defendant standing alone, the confession and admissions may be considered for that purpose together with other facts and circumstances tending to prove the *corpus delicti*.

The *corpus delicti* was established not solely by the confession and admissions of appellant. Other facts recited above were sufficient for that purpose. The identification of the body of the victim was complete.

■ Counsel for appellant next challenge the validity of the charging portion of the alternative averment, dealing with the murder in the perpetration of a felony, in that the second portion of the information is not framed in the language of the statute. Pertinent language of the statute is as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

"1. With a premeditated design to effect the death of the person killed, or of another;

"3. Without design to effect death, by a person en-

gaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; . . . " Rem. Rev. Stat., § 2392.

The question raised by appellant is foreclosed. We cannot agree with the argument of counsel for appellant that this is an erroneous charging of several offenses in one information. We have consistently held that an information like the one in the case at bar is valid. We stated in *State v. Hall*, 185 Wash. 685, 56 P. (2d) 715:

"There is no good reason, in our opinion, to depart from the current of authority and hold the amended pleading in this case bad when, most reasonably, it can and must be said that it alleges that the crime complained of was but a single act or transaction, all committed at one and the same time and place, in violation of the law against murder in the first degree, simply because the act or transaction responds to two statutory ways of committing that crime. The ways or means mentioned were merely descriptions of the particular crime of murder in the first degree charged to have been committed at that time. Whether the crime was committed by either or both ways, the penalty is precisely the same."

See, also, *State v. Anderson*, 10 Wn. (2d) 167, 179, 116 P. (2d) 346, where we said:

"As we have stated, the double aspect in which the information was drawn is sanctioned by the decisions of this court. *State v. Fillpot* and *State v. Miller, supra*. Such an information is not duplicitous. Nor is it defective in not stating in specific detail the facts and elements of the burglary or robbery upon which the crime of murder in the first degree is charged under Rem. Rev. Stat., § 2392, subd. 3. The state's case was necessarily based upon and built around the confession and admissions of appellant. We cannot conceive of any fact which the state, by way of bill of particulars or by way of making the information

more definite and certain, could have furnished him that was not already locked up in his own breast."

The judgment is affirmed.

ROBINSON, C. J., STEINERT, JEFFERS, and MALLERY, JJ., concur.

[1]Reported in 132 P. (2d) 727.