[No. 29351.   Department One.   November 16, 1944.]

THE STATE OF WASHINGTON, *Respondent*, v. WOODROW WILSON CLARK, *Appellant*.[1]

[1]Reported in 153 P. (2d) 297.

*Lucius G. Nash* and *Frank J. Blade,* for appellant.

*Leslie M. Carroll* and *Clarence P. Smith,* for respondent.

MILLARD, J.—Defendant was, by information in two counts, charged with the crime of murder in the first degree. The pertinent portion of the information reads as follows:

"That the said defendant, Woodrow Wilson Clark, in the County of Spokane, State of Washington, on or about the

15th day of January, 1944, then and there being, did then and there willfully, unlawfully and feloniously without excuse or justification, and with a premeditated design to effect the death of one T. P. Dillon, and while then and there unlawfully engaged in an attempt to commit, and in committing and in withdrawing from the scene of the rape of one Jane Staples, did then and there make an assault upon the said T. P. Dillon with a hatchet, which said hatchet he, the said defendant, then and there held in his hand, and with the said hatchet so held in his hand the said defendant did then and there strike the said T. P. Dillon repeatedly in the head, and in the manner and by the means aforesaid did inflict upon the said T. P. Dillon mortal wounds, of which said mortal wounds the said T. P. Dillon did then and there die."

"That the said defendant, Woodrow Wilson Clark, in the County of Spokane, State of Washington, on or about the 15th day of January, 1944, then and there being, did then and there willfully, unlawfully and feloniously, without excuse or justification, and with a premeditated design to effect the death of one Flora Gertrude Dillon, and while then and there unlawfully engaged in an attempt to commit, and in committing and in withdrawing from the scene of the rape of one Jane Staples, did then and there make an assault upon the said Flora Gertrude Dillon with a hatchet, which said hatchet he, the said defendant, then and there held in his hand, and with the said hatchet so held in his hand the said defendant did then and there strike the said Flora Gertrude Dillon repeatedly in the head, and in the manner and by the means aforesaid did inflict upon the said Flora Gertrude Dillon mortal wounds, of which said mortal wounds the said Flora Gertrude Dillon did thereafter and on or about the 19th day of January, 1944, die."

Trial to the jury resulted in a verdict finding defendant guilty on both counts as charged in the information and that the death penalty shall be inflicted upon him. Defendant has appealed from the judgment and sentence entered against him upon the verdict.

Error is first assigned on trial court's refusal to sustain demurrer to the information on the ground that the information is duplicitous, and on denial of motion to strike from the information "and while then and there unlawfully engaged in an attempt to commit, and in committing and in

withdrawing from the scene of the rape of one Jane Staples."

The question raised by appellant is foreclosed. The information is based on the statute (Rem. Rev. Stat., § 2392 [P. C. § 8997]), the material language of which is as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed, either—

"1. With a premeditated design to effect the death of the person killed, or of another; or, . . .

"3. Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of . . . rape, . . ."

There is not an erroneous charging of several offenses in one information. We have consistently held that an information like the one in the case at bar is valid. *State v. Whitfield,* 129 Wash. 134, 224 Pac. 559; *State v. Hall,* 185 Wash. 685, 56 P. (2d) 715; *State v. Anderson,* 10 Wn. (2d) 167, 116 P. (2d) 346; and *State v. Montgomery,* 16 Wn. (2d) 130, 132 P. (2d) 720.

The assignment that the court erred in giving instructions Nos. 6, 7, 8, 9, and 10 and in refusing to give appellant's requested instruction No. 5, is based upon the conclusion that the information is duplicitous. The information is not vulnerable to that assault upon it, therefore the assignment is without substantial merit.

■ Clearly, the court did not err in refusing to give requested instruction No. 5 that, even if the jury found beyond all reasonable doubt that appellant did rape or attempt to rape, or withdraw from the scene of his rape of Jane Staples, if the jury could not find beyond all reasonable doubt that such fact, if any, was the proximate cause of the deaths of T. P. Dillon and Flora Gertrude Dillon, then the verdict should be not guilty.

Under the evidence, the jury was warranted in finding that appellant killed T. P. Dillon and Mrs. Dillon while engaged in the commission of, or in attempting to commit, or in withdrawing from the scene of, the rape of Jane Staples. It follows that, under the statute (Rem. Rev. Stat., § 2392),

appellant would be guilty of murder in the first degree. It is unnecessary to review sustaining authorities.

■ It is next urged that the court erred in denying to appellant's counsel the right to examine the three typewritten exhibits which record the confessions made by appellant to police officers and to the prosecuting attorney.

It fairly appears from the three exhibits that appellant freely confessed that he murdered T. P. Dillon, Flora Gertrude Dillon, and Jane Staples, and that he mutilated Frank Wennette, the crimes being committed with a hatchet.

A prosecuting attorney is under no obligation to submit any evidence he has in his possession to counsel for a person charged with crime. *State v. Payne,* 10 Wash. 545, 39 Pac. 157. The state is not required to submit its evidence to counsel for the accused. The accused is not, as a matter of right, entitled to have for inspection before trial evidence which is in possession of the prosecution. Such matter is peculiarly within the trial court's discretion, with which we will interfere only when there has been a manifest abuse of discretion. *State v. Allen,* 128 Wash. 217, 222 Pac. 502; *State v. Morrison,* 175 Wash. 656, 27 P. (2d) 1065; *State v. Ingels,* 4 Wn. (2d) 676, 104 P. (2d) 944.

Counsel for appellant have not directed our attention to, nor has our examination of the record elicited, anything prejudicial to appellant as a result of the court's ruling.

■ The contention that appellant's motion for a bill of particulars should not have been denied, is without merit. Language, as follows, in our opinion in *State v. Anderson,* 10 Wn. (2d) 167, 116 P. (2d) 346, is apt in the case at bar:

"The state's case was necessarily based upon and built around the confession and admissions of appellant. We cannot conceive of any fact which the state, by way of bill of particulars or by way of making the information more definite and certain, could have furnished him that was not already locked up in his own breast."

■ The contention that the court erred in denying the challenge to the sufficiency of the evidence and in denying the motion for directed verdict of acquittal, is also without merit.

There is abundant competent evidence that, while engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, the rape of Jane Staples, appellant killed T. P. Dillon and Mrs. Dillon, which constitutes murder in the first degree under the statute (Rem. Rev. Stat., § 2392).

The confessions of appellant, which were not made under the influence of fear produced by threats, are clear. Appellant confessed that the evening of January 14, 1944, he went to a certain beer parlor in Spokane, where he joined a group of persons consisting of T. P. Dillon, Mrs. Dillon, Mrs. Jane Staples, Ed Johnson, and Frank Wennette. After drinking beer at the place mentioned, the group went to another beer parlor, which was next door to the Dillons' shop and residence. Jesse Hayford and Robert Hart then joined the party. At midnight the group, after purchasing several quarts of beer and a dozen eggs, went to the living quarters of the Dillons. T. P. Dillon objected to appellant's improper attentions to Mrs. Dillon and threatened appellant, who confessed that it was his intention, if Dillon left the house, to go to bed with Mrs. Dillon.

About two a. m. January 15, 1944, Robert Hart obtained bacon from his apartment and the party, appellant building the fire, had a dinner or early breakfast of bacon and eggs. Thereafter most of the group continued to drink beer. Hart fell asleep in his chair, awakening at four a. m. He, Ed Johnson, and Jesse Hayford then departed. Appellant, T. P. Dillon, Mrs. Dillon, Frank Wennette, and Mrs. Staples remained at the Dillon apartment. The parties retired to bed. Mrs. Dillon was lying on the bed next to the wall; next to Mrs. Dillon was her husband; next to him was Mrs. Staples; and lying alongside of Mrs. Staples was appellant. During the early morning hours appellant renewed his attempts at sexual intercourse with one of the two women. All members of the party, except appellant—so he testified—were then asleep. Appellant did not know which one of the women was the object of his attentions at that time. His efforts aroused Dillon, who attempted to arise from the bed, whereupon appellant killed Dillon with a hatchet. Appel-

lant then killed the two women. He said he started to depart from the bedroom when Wennette "started for me and I hit him and I left after that." Three of the persons attacked died as a result of their injuries. Frank Wennette had nine skull fractures. He was called as a witness, but his injuries precluded his testifying.

About nine a. m. January 15, 1944, Dillon's partner appeared at the Dillon paint shop. There was no response to his knock at the front door. He went to the back door, walked in and, so he testified, saw four people lying on the bed, their faces bloody and blood on the wall. Two other witnesses testified to the same effect. Two police officers were called. According to their testimony, they found three bodies all covered with blood and cut about the head. Upon further investigation, they discovered there were four bodies upon the bed, all of whom were apparently hacked with a sharp instrument, hatchet or axe. Their investigation elicited the fact that Dillon and Mrs. Staples were dead and that Mrs. Dillon and Mr. Wennette were still alive. The two still living were removed to the hospital, where Mrs. Dillon died January 19, 1944, as a result of appellant's assault. Mr. Wennette is still suffering from his injuries and, as stated above, is incapable of testifying because of those injuries.

Prior to five a. m. January 15, 1944, appellant was seen by a number of persons within a radius of two or three blocks of the Dillon home. Two of the persons testified that appellant was wearing a white sweat shirt identified as exhibit 18, on which was a discoloration which appeared to be blood. Other witnesses testified that they either did not notice any blood or that there was none on the sweat shirt in which they saw appellant dressed that morning.

Appellant returned to his hotel about six a. m. He arose shortly ahead of his roommate, who arose about noon. Appellant stated to his roommate that he was lying on a bed with a woman and that Dillon came in with a gun; that there was a quarrel, then he left the Dillon place about two a. m. Appellant and his roommate then went to a beer parlor, where they read in a morning newspaper an account

of the murder. Appellant told his roommate that was the place where he had been and he then showed his roommate one of Dillon's business cards, which he tore into pieces and placed the bits in an ash tray, where it was later found by a police officer.

Appellant told one of the roomers in the hotel where he resided that he almost got into trouble with a married woman in a beer parlor. Appellant was arrested about four-thirty p. m. January 18, 1944. He was identified by a number of persons as the person they saw at the party at the Dillon home the night of January 14, 1944, and that he was the man who was dressed in a white sweat shirt whom they saw roaming the streets in the vicinity of the Dillon residence. At first appellant denied that he was near the Dillon residence, but later admitted that he had been there and he then freely confessed his guilt.

Appellant admitted that he never at any time was abused while in the city jail, and that his only complaint was concerning a remark of one of his interrogators which "I didn't like very well." The hatchet with which the crime was committed was admitted in evidence. It was covered with human blood and human hair. The underclothing worn by Mrs. Staples at the time she was murdered was introduced in evidence, and it is fairly inferable from an inspection of that garment that the murderer wiped his bloody hands on her bloomers. The white sweat shirt worn at the time of his arrest and the white sweat shirt which witnesses identified as the one worn by appellant immediately following his commission of the crimes, and which was smeared with blood, were introduced in evidence.

Counsel for appellant urges as error the admission in evidence of certain exhibits. Seven exhibits, photographs of the Dillon home, of the people found in that place, and of the interior of the Dillon apartment, were properly admitted in evidence. It is hardly likely, as contended by counsel for appellant, that the photographs were calculated to prejudice and inflame the minds of the jurors. The exhibits were not more calculated to inflame the minds of the jurors than was the cold-blooded recital of appellant of the

details of his horrible crimes. There was no abuse of discretion in admitting the photographs in evidence. They were sufficiently identified as representing the situation at the time of the discovery of the crime. *State v. Tyree*, 143 Wash. 313, 255 Pac. 382; *State v. Gaines*, 144 Wash. 446, 258 Pac. 508.

■ Exhibits 12 and 13 are two business cards of T. P. Dillon, a sign painter, who, with his wife, was murdered by appellant. One of those cards was torn by appellant and placed in an ash tray while in a beer tavern the morning of January 15, 1944, when he was discussing with his roommate a newspaper account of the murder. Appellant told a police officer what he had done with the card. The officer went to the place named by appellant and recovered the exhibit. The finding of the card corroborated that portion of appellant's confession relating to his conversation with his roommate respecting the murder. Exhibit 13 was a business card of T. P. Dillon taken from the Dillon premises by the officers and introduced in evidence to permit the jury to compare that card with the card which appellant thought he had destroyed. The exhibits are corroborative of a part of the confession.

■ Exhibit 15 is a pair of brown trousers appellant stated he wore at the time that he committed the crimes, from conviction of which he now appeals. The value of the trousers as an exhibit was a matter for the determination of the jury. *State v. Montgomery*, 16 Wn. (2d) 130, 132 P. (2d) 720.

■ Exhibit 17, a pair of pink bloomers removed from the body of Mrs. Staples after discovery of the murders, was admissible in evidence. A reading of appellant's confession discloses the foul purpose of appellant respecting the two women and that it was a matter of indifference to him which of the two women was to be his victim. The bloomers are corroborative of appellant's confession as to his attempts at sexual intercourse with one or both of the women when his victim was lying on the bed shortly prior to the time she was murdered. There is blood upon exhibit 17—the bloomers—from which the jurors could reasonably infer that during or after commission of the murders appellant

persisted in his attempt to satisfy his unholy desire and that he placed his bloody hands on his victim's underwear while completing the act of rape, or, after completion of that crime, that he wiped the blood from his hands on that garment.

██ Exhibits 18 and 19 are two light colored sweat shirts. Exhibit 19 was worn by appellant when he was arrested. Exhibit 18 was discovered January 24, 1944, by one of the police officers when he returned to the scene of the crimes and sorted the bed clothing for storage.

Appellant stated in his confession that he wore exhibit 19 when he committed the murders. Some of the witnesses testified that, when they saw appellant the early morning after his departure from the Dillon apartment, he was wearing exhibit 18. The two exhibits were admissible in evidence. Whether appellant was wearing exhibit 18, on which was the blood stain, when the witnesses saw him shortly after he had committed the crimes, or whether he was wearing exhibit 19, which was free from such stain, was a question of fact for the jury. It may be that, after departing from the scene of the murders, appellant discovered he was wearing the blood-stained sweat shirt, whereupon he returned to the Dillon home and exchanged it for exhibit 19, leaving exhibit 18, which was later found by the officers. Some of the witnesses may have seen him while wearing the blood-stained shirt, others may have seen him after he had exchanged that shirt for one not so stained.

██ There is no merit in the assignment that the court erred in admitting in evidence exhibits 9, 10, and 11, which were the record of the confessions of appellant. The record fails to disclose any substantiation of a claim that appellant was mistreated. A reading of the confessions shows that they were voluntarily given as contemplated by the statute and were properly admissible in evidence. The confessions were not obtained under the influence of fear produced by threats; and those confessions, together with ample corroborating evidence, are sufficient to warrant a conviction. The statute governing the admission in evidence of confessions reads as follows:

"The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony." Rem. Rev. Stat., § 2151 [P. C. § 9217].

"It is next argued that a statement or an alleged confession made by the accused to the sheriff and the prosecuting attorney and taken down in writing by a stenographer and admitted in evidence, was erroneously admitted, because the statement was made under the influence of fear produced by threats, and therefore violated the constitutional provision, that, 'no person shall be compelled in a criminal proceeding to give evidence against himself.' The testimony on the part of the state shows, however, that the statement was made freely and voluntarily by the accused. This was denied by the defendant at the trial. Unless it appeared that the confession was made under the influence of fear produced by threats, it was the duty of the court to admit the confession or statement in evidence. Where the evidence is in conflict upon this point, the question is then for the jury." *State v. Wilson,* 68 Wash. 464, 467, 123 Pac. 795. See, also, *State v. Mann,* 39 Wash. 144, 81 Pac. 561; *State v. Smythe,* 148 Wash. 65, 268 Pac. 133; and *State v. Elwood,* 193 Wash. 514, 76 P. (2d) 986.

Appellant had a fair trial. His confessions and admissions, corroborated by abundant testimony and other evidence, sustain the verdict of the jury. A careful reading of the record does not disclose reversible error.

The judgment is affirmed.

SIMPSON, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.