[No. 34904. *En Banc.* April 23, 1959.]

THE STATE OF WASHINGTON, *Plaintiff and Relator*, v. HENRY L. THOMPSON, *Defendant*, THE SUPERIOR COURT FOR WHATCOM COUNTY, *Bert Kale, Judge, Respondent.*[1]

[1]Reported in 338 P. (2d) 319.

*Tom A. Durham* and *Dan R. Olson*, for plaintiff and relator.

*F. W. Durnan* (of *LeCocq, Simonarson & Durnan*) and *George Livesey, Jr.* (of *Livesey, Kingsbury & Livesey*), for respondent.

*Charles O. Carroll, Charles Z. Smith, James D. Burns, Robert E. Dixon, Robert L. Fletcher,* and *Johnston & Raley, amici curiae.*

HUNTER, J.—This is a review by writ of certiorari of an order entered by the Superior Court of Whatcom county requiring the prosecuting attorney of Whatcom county to produce certain evidence in his possession for defendant's counsel to examine in preparation for their defense to a first-degree murder charge against the defendant.

Henry L. Thompson, Jr., an eighteen-year-old Indian boy from Deroche, Canada, was charged with the crime of murder in the first degree. He was arrested June 14, 1958 and arraigned on June 20, 1958, during which time he was without the benefit of counsel. Since the defendant wished to have counsel and was without funds, the court appointed counsel. During the time the defendant was under arrest and without benefit of counsel, he signed certain statements which were prepared by law enforcement authorities. August 28, 1958, the defendant moved the superior court for an order requiring the prosecuting attorney to deliver to defendant's counsel these statements or copies thereof, the autopsy reports, and other evidence in the possession of the prosecution. The affidavit in support of this motion stated that inspection of the documents was necessary to the proper preparation for trial of the cause and essential to cross-examination, and for possible impeachment purposes.

September 16, 1958, the trial court advised counsel for the state and the defendant, by letter, as follows:

"Gentlemen:

"The defense moved in this matter for a production of documents and transcripts of expected testimony from witnesses to be called by the prosecution. The prosecution has resisted this motion and both parties have provided the Court with their memorandums of authorities in support of their positions.

"The matter was argued before the Court on the 8th day of September and thereafter taken under advisement.

"After considering all of the authorities involved, the Court is of the opinion that in the state of Washington a demand of this nature by the defendant in a criminal case places the entire matter at the discretion of the trial court. In this case we have a Canadian Indian boy of the age of 18 years charged with first degree murder. He had no money and the Court appointed counsel to defend him.

"It is the opinion of the Court that justice would best be served in this cause if the defendant were permitted to examine the statements given by him in response to the questioning of officers and the prosecution, which statements apparently are now in the possession of the prosecutor. In addition to the permitted inspection of these documents, the prosecution should supply copies thereof to the defense. Likewise, the defense should be permitted to inspect and to receive a copy of any and all autopsy reports in the possession of the prosecuting attorney.

"The Court denies the balance of defendant's motion for production of instruments and summations of testimony. . . ."

In pursuance thereof, the court entered an order on September 22, 1958, directing the state to produce for inspection, together with copies, (1) all statements given by defendant; (2) all autopsy reports in its possession; with the further direction, not included in the foregoing letter, that the state produce any written statements or reports made by the Federal Bureau of Investigation, as the result of any examination made of the clothing and/or personal effects and of and/or blood samples of the defendant and Ethel Tussing, deceased, the alleged victim.

The state was thereafter granted a hearing by this court

upon its application for a writ of prohibition, which we are now considering as a review by writ of certiorari, it having been so agreed by counsel upon written stipulation.

There is a dispute of authority in other jurisdictions as to the extent the prosecution is required to make evidence available which may be in its possession for examination by the defense in criminal cases. However, the rule has been well established in this state since the early case of *State v. Payne*, 10 Wash. 545, 39 Pac. 157 (1895), wherein we held this is a matter within the discretion of the trial court which we will not disturb unless there is a manifest abuse of discretion. *State v. Allen*, 128 Wash. 217, 222 Pac. 502 (1924); *State v. Morrison*, 175 Wash. 656, 27 P. (2d) 1065 (1933); *State v. Ingels*, 4 Wn. (2d) 676, 104 P. (2d) 944 (1940); *State v. Clark*, 21 Wn. (2d) 774, 153 P. (2d) 297 (1944); *State v. Payne*, 25 Wn. (2d) 407, 171 P. (2d) 227 (1946); *State v. Petersen*, 47 Wn. (2d) 836, 289 P. (2d) 1013 (1955).

In *State v. Payne*, 25 Wn. (2d) 407, citing *State v. Clark*, *supra*, we affirmed the rule of all our prior decisions. We said:

" 'A prosecuting attorney is under no obligation to submit any evidence he has in his possession to counsel for a person charged with a crime. *State v. Payne*, 10 Wash. 545, 39 Pac. 157. The state is not required to submit its evidence to counsel for the accused. The accused is not, as a matter of right, entitled to have for inspection before trial evidence which is in possession of the prosecution. *Such matter is peculiarly within the trial court's discretion, with which we will interfere only when there has been a manifest abuse of discretion. State v. Allen*, 128 Wash. 217, 222 Pac. 502; *State v. Morrison*, 175 Wash. 656, 27 P. (2d) 1065; *State v. Ingels*, 4 Wn. (2d) 676, 104 P. (2d) 944.' " (Italics ours.)

In all the cases cited, except the *Petersen* case which we will comment upon later in this opinion, the trial court denied the requests made by the defense to examine certain evidence in possession of the prosecution. In each instance, we held this was not an abuse of discretion.

In applying the rule to the present case, we have the converse situation. Did the trial court manifestly abuse its discretion in granting the defendant's request to examine cer-

tain evidence of the prosecution under the facts presented? ■ ■ The trial court's reasons for exercising its discretion as it did are succinctly stated in the letter addressed to counsel heretofore set out. The defendant was from a foreign country; he was scarcely above juvenile court age; he was indigent and without funds to assist in the conduct of his own investigation; he was charged with a capital offense. In view of these circumstances, we cannot say the trial court's conclusions that justice would be best served by permitting defendant's counsel to examine the evidence in the hands of the prosecution, as limited by the order, amounted to a manifest abuse of discretion. That this is an area in which there is room for an exercise of discretion, is demonstrated by decisions from other jurisdictions. The annotation in 156 A. L. R. 345, on the subject of the "right of defendant in criminal case to inspection or production of contradictory statement or document of prosecution's witness for purpose of impeaching him" covers many of the earlier decisions where the defendant has been granted or denied this information. The annotation is entitled "discretion of court" and states in part:

"The granting or refusal of the accused's request for the production or inspection of a writing in the prosecution's possession contradicting the testimony of its witness lies in the discretion of the trial court."

Relator further contends, however, that the discretion of the trial court has been limited by statute in so far as requiring the prosecution to produce the report of the autopsy performed upon the alleged deceased victim. Laws of 1953, chapter 188, § 9, p. 404 (RCW 68.08.105) provide as follows:

"Reports and records of autopsies or post-mortems shall be *confidential,* except to the prosecuting attorney or law enforcement agencies having jurisdiction, or to the department of labor and industries in cases in which it has requested the autopsy." (Italics ours.)

Relator argues that, by this section, the autopsy report is privileged and beyond the process of the court.

It does not necessarily follow from the use of the word *"confidential,"* that it was the legislative intention that this

word have the same import as the word "privileged." In 1 Bouvier's Law Dictionary (3d Rev.) 592, under the heading of "confidential communication," it is stated:

"At law, certain classes of such communications are held not to be proper subjects of inquiry in courts of justice, . . ."

■ The intention of the lawmaking body to place the autopsy report in a class which is not subject to judicial inquiry or process cannot be determined by the word "confidential" as used alone in the cited section of the statute. The legislative intent must be gleaned from an examination of the enactment in its entirety. *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693 (1949), and cases cited.

Section 12 of the enactment (RCW 68.08.102) provides:

"Any party by showing just cause may petition the court to have autopsy made and results thereof made known to said party at his own expense."

■ The right to an autopsy is here lodged within the discretion of the court. The confidential nature of the autopsy related to in § 9 (RCW 68.08.105) when read with § 12 (RCW 68.08.102), does not indicate the condition of the body of a deceased person is to be free from judicial inquiry.

A construction of "privileged" placed on the word "confidential" could well defeat the exercise of the court's discretion in making the information of a post-mortem examination, in some instances, available under circumstances where the condition of the body had changed so extensively—resulting from the first autopsy or from deterioration—that the performance of a second post-mortem examination would disclose nothing. Under these circumstances, the refusal of the prosecution to make the autopsy report in his hands available to a person who, in the discretion of the court, was entitled to this information, would amount to a denial of justice and would abort the legislative intent.

In *State ex rel. State v. Church,* 35 Wn. (2d) 170, 211 P. (2d) 701 (1949), we held that the department of social security, by the rule-making authority vested in it by the

legislature (Laws of 1941, chapter 128, § 5, p. 379, 382 [cf. Rem. Supp. 1941, § 10007-103a *et seq.*] could not, in classifying its records as confidential, place them beyond the reach of court process. In construing this statute, *supra*, we held it did not forbid disclosures made in response to subpoena. We said:

"As we construe the statute and the rules and regulations adopted thereunder, they were not intended to prevent disclosure of the information pursuant to a court order entered under the circumstances shown here. Ten men are now on trial before the superior court charged with a serious crime, for which, in the event they are convicted, they may receive severe penal sentences. The judge presiding at the trial has stated that the interests of justice require the production of the information in the possession of the administrator of the county welfare department and has directed that it be deposited by him with the clerk of the court for the purposes stated in the order of November 4, 1949. . . .

"This action of the trial court is necessary in order to accord the accused a fair trial under our state constitution, which guarantees to persons accused of crime the right to have compulsory process to compel the attendance of witnesses in their own behalf (Art. I, § 22 as amended)."

See, also, *State ex rel. Haugland v. Smythe,* 25 Wn. (2d) 161, 169 P. (2d) 706, 165 A. L. R. 1295 (1946).

Like the statute construed in the *Church* case, *supra,* there is no prohibition in RCW 68.08.105, *supra,* against disclosure of the autopsy report in response to court process. We hold that the cited statute does not limit the court, in the exercise of its discretion, in making the autopsy report subject to judicial inquiry.

The relator urges that the *Petersen* case, *supra,* holds the autopsy report was not amenable to court process. In that case we held that a trial judge has no jurisdiction to abate a criminal proceeding permanently. We said:

"The state is appealing from the *order permanently abating the criminal proceeding. The only question before us is whether the trial judge had the authority to enter the order;* . . ." (Italics ours.)

We went on to hold that he had no authority, that his action constituted an abuse of discretion and vacated the order of abatement.

In the *Petersen* case, *supra,* our observations relative to autopsies were not necessary to the result and were therefore dictum and may be disregarded.

There being no abuse of discretion committed by the trial court, the order granting defendant's motion is affirmed.

WEAVER, C. J., DONWORTH, FINLEY, and ROSELLINI, JJ. concur.

ROSELLINI, J. (concurring)—I concur with the majority but believe that some reference should be made to the objections which are usually raised where a confession in the hands of the prosecutor is sought by a defendant, namely, the fear that the task of the prosecutor will be made more onerous and the fear that a guilty defendant may be given an advantage which will permit him to escape punishment.

Richard Arens and Arnold Meadow, the authors of "Psycholinguistics and the Confession Dilemma" (56 Col. L. Rev. 19), point out:

" . . . pre-trial discovery cannot operate to the predjudice of the prosecution with clean hands. The occasional detection of dishonest practices of a defendant does not furnish adequate grounds for the denial of all demands for necessary pre-trial discovery. The spectre raised by fears of trickery and deceit has long been laid to rest.

"The possibility that a dishonest accused will misuse such an opportunity is no reason for committing the injustice of refusing the honest accused a fair means of clearing himself. The argument is outworn; it was the basis (and with equal logic) for the one-time refusal of the criminal law to allow the accused to produce any witnesses at all. Modern rationalism should extend to the accused this right of inspection. . . . [6 Wigmore, Evidence § 1863 (3d ed. 1940)]"

The court in *State v. Dorsey,* 207 La. 928, 963, 22 So. (2d) 273 (1945), granted a pre-trial inspection of the defendant's confession and stated:

"We concede the possibility of manufacturing a refutation of a confession after inspection and before trial. How-

ever, even conceding this, we do not think that this fact and the reasons above set forth by the courts of other states should outweight the danger of convicting an innocent accused, and it is our opinion that to permit such an inspection is nothing less than is required by fairness to a defendant under the presumption of innocence. . . .

"Under the provisions of the Constitutions of the United States and this State, every accused is entitled to, and is guaranteed, a fair trial, and to deny his counsel a pre-trial inspection of accused's written confession is, in our opinion, tantamount to depriving such accused of a fair trial, and is in violation of his constitutional rights."

The trend of the modern decisions seems to indicate a more liberal attitude toward pre-trial discovery in criminal trials. A New York opinion summarizes the pattern of development:

"It was the generally accepted rule for years that the accused had no right to the inspection or disclosure of evidence in the possession of the prosecution. But that rule has been gradually relaxed. . . .

"In modern days, courts strive to see that justice shall prevail in a given case rather than that there shall be a slavish adherence to well-beaten tracks. Just as in civil cases, where there originally was no discovery or inspection and that procedure developed through gradual evolution, there is now slowly being born a tendency to apply that procedure in certain proper cases in the criminal courts. There is no good reason why in a proper case, in the exercise of a sound discretion, the courts of criminal jurisdiction should not be permitted to make available to a defendant before trial, by discovery and inspection, legal evidence in the possession of the district attorney. The primary object of the criminal court is to render substantial justice and not to obtain a conviction. . . . Application of Hughes, 181 Misc. 668, 672-73, 41 N. Y. S. 2d 843, 847 (Sup. Ct. 1943)." 56 Col. L. Rev. 19, 30.

The authors further point out that in the use of the science of psycholinguistics, it is possible to determine the genuineness or voluntary character of a confession. The nature of this science and the use that can be made of it in a criminal matter is fully explained in the text of the article. It would appear that the instant case is one in which the

application of such scientific knowledge could be of value to the accused in his defense. The state should be as eager to prove that an offered confession is genuine and voluntary as the defendant is to establish the opposite, and this new science can aid the one as well as the other.

The court is committed to the rule that the granting or denying of a request for pre-trial discovery in a criminal matter rests in the sound discretion of the trial court. The trial court in the exercise of its sound discretion is always motivated by its duty to see that neither the state nor the defendant is given any undue advantage or disadvantage in the trial. Thus, the interests of the state and the defendant may be protected to the end that both parties will have a fair trial.

FINLEY, J., concurs with ROSELLINI, J.

FINLEY, J. (concurring)—The phrase, "trial from ambush," pretty well characterizes a certain viewpoint or nostalgic legal philosophy accorded considerable credence in the not too distant past. The viewpoint, belatedly, can be evaluated as both irrational and archaic—a hangover from a more immature era in our evolving Anglo-American system of jurisprudence. Today, through the implementation of discovery and pretrial techniques, "trial from ambush" may be eliminated, or at least substantially circumvented, as the *modus operandi* in the trial and disposition of disputes between citizens, and in other civil causes of action.

It seems to me that in criminal cases there is even more reason than in civil cases for giving less leeway and sway to the notions of "trial from ambush." For this reason, and others which seem convincing to me, I have signed the majority opinion and, likewise, have concurred in the views of Judge Rosellini.

OTT, J. (dissenting)—This appeal presents an issue of first impression in this state. I dissent to the majority opinion for the following reasons:

(1) The trial court granted to one accused of having committed a crime the *right* to be informed of the *contents*

*and nature of certain documentary evidence in the files of the prosecuting attorney.*

Both the state and federal constitutions guarantee to a defendant, *inter alia,* the right *to be informed of the nature of the accusation against him and to be furnished a copy thereof.* The majority opinion does not cite any constitutional provision, statute, or court rule that grants to a defendant the right, *before trial,* to be informed of the nature of the state's evidence. It was not until court rules were regularly adopted that discovery procedure was permitted in this state in civil cases. Neither the legislature, nor this court by the exercise of its rule-making power, has extended discovery procedure to include criminal cases.

In reviewing a request for similar information, Judge Benjamin Cardozo, speaking for the highest tribunal in New York state, said:

" . . . The documents to be exhibited to this defendant are not evidence for any one. They are merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter. *A mandate giving them publicity is something more than error in the exercise of power. It is an assumption of power where none has been confided* [citing cases]." (Italics mine.) *People ex rel. Lemon v. Supreme Court,* 245 N. Y. 24, 156 N. E. 84, 52 A. L. R. 200 (1927).

In my opinion, the trial court, in the instant case, assumed power where none had been conferred. It had no legal authority to order the prosecuting attorney to furnish to the defendant copies of the documentary evidence requested.

(2) In *State v. Petersen,* 47 Wn. (2d) 836, 289 P. (2d) 1013 (1955), we decided the issue with reference to an autopsy report in the files of the prosecuting attorney. In that case we said:

"We conclude . . . that such a report would remain confidential while in the possession of the prosecuting attorney, *unless the legislature* has provided elsewhere that others may obtain it from the prosecutor. We have found no enactment to the latter effect.

"We note in passing that our interpretation of the pertinent statutes is in harmony with the general rule (sup-

ported by the weight of authority) to the effect that *an accused may not have access, as a matter of right, to evidence in the possession of the prosecution.* [Citing cases.]" (Italics mine.)

We unanimously held, in the *Petersen* case, that the trial court lacked *legislative authority* to order the prosecuting attorney to furnish a copy of an autopsy report, and that the accused could not obtain it "as a matter of right." This court's reasoning in the *Petersen* case is apropos to, and should be decisive of, the issue presented here.

(3) I do not agree with the majority that the matter relating to the autopsy report in the *Petersen* opinion was dictum. Dictum is a judicial observation or remark which is not necessary to the determination of any issue in the case. *State ex rel. Lemon v. Langlie,* 45 Wn. (2d) 82, 89, 273 P. (2d) 464 (1954). In the *Petersen* case, the trial court ordered the criminal proceeding abated *because the prosecuting attorney refused to furnish the defendant with a copy of the autopsy report.* We held that the *refusal* was not a ground for abatement, because "*such a report is confidential in the hands of the prosecutor, and he would be violating the mandate of the statute by giving respondents such a copy.*" The determination of the question relating to the autopsy report was crucial and decisive of the court's lack of authority to abate the proceeding. Applying the definition announced in *State ex rel. Lemon v. Langlie, supra,* the paragraphs in the *Petersen* case relating to the autopsy report were necessary to the decision and, therefore, not dictum.

In my opinion, the trial court's order should be quashed.

MALLERY, HILL, and FOSTER, JJ., concur with OTT, J.