[No. 29864. *En Banc.* January 3, 1947.]

THE STATE OF WASHINGTON, *Respondent,* v. ARCHIE BROWN et al., *Appellants.*[1]

[1]Reported in 176 P. (2d) 293.

*George H. Freese,* for appellant Brown.

*Floyd A. Futter,* for appellant Johnson.

*William J. Gaffney,* for respondent.

CONNELLY, J.—On October 13, 1945, the prosecuting attorney for Franklin county, Washington, filed with the clerk of the superior court an information charging Archie Brown, Aaron Johnson, and Willie Smith with the crime of murder in the first degree in count No. 1, and with the crime of robbery in count No. 2. Each offense was alleged to have been committed on or about September 28, 1945. The defendants are negroes. Upon their arraignment, it was discovered that they were without funds, and two lawyers of the locality in which the court was situated were appointed, by order of the court, to represent them in the trial of the matters charged in the information. This was in accordance with Laws of 1941, chapter 151, p. 427, § 1 (Rem. Supp. 1941, § 2305 [P.P.C. § 120-1]), which fixes a maximum per diem of twenty-five dollars, and a fixed payment of twenty-five dollars for preparation, to be paid by the county.

Before trial in the lower court, motions for separate trial were interposed and denied. Motions for change of venue, based upon affidavits averring strong local racial prejudice against the defendants, were filed, argued, and denied. At the opening of the trial, defendant Willie Smith pleaded guilty and later testified as a witness for the state. Trial of the three resulted in a verdict of guilty of first-degree murder, with the death penalty recommended against the defendants Archie Brown and Aaron Johnson. It was not

recommended in the verdict finding defendant Willie Smith guilty. Brown and Johnson are appellants in the present proceeding.

Following denial of motions for new trial, judgment and sentence was entered against each of the defendants, with a special provision in the sentence imposed upon defendants Archie Brown and Aaron Johnson that each be hanged by the neck until dead. This judgment and sentence was entered and filed with the clerk of the superior court for Franklin county on November 29, 1945. Written notices of appeal to the supreme court of the state of Washington were served and filed in behalf of defendants Brown and Johnson on November 29, 1945.

At the time judgment and sentence was imposed upon the defendants, the court entered an order directing that the statement of facts and briefs on appeal be paid for out of public funds, under the terms of Rem. Rev. Stat., § 1729 [P.P.C. § 5-37]. The same attorneys continued their representation of the defendants on appeal, under the original order of the court appointing them, and now appear in this court seeking relief for their clients.

The clerk of the superior court for Franklin county did not immediately prepare and transmit to the clerk of the supreme court certified copies of the judgment appealed from and the notices of appeal, as required by Rule 12 of the rules of this court, but waited until January 3, 1946, some thirty-six days after the filing of the notices of appeal, to forward such certified copies to the clerk of this court.

On January 4, 1946, the appeals were docketed in the office of the clerk of this court. No five-dollar filing fee accompanied either notice of appeal, as required to be paid by the appellant in the appeal of criminal cases, under the terms of Rule 12. These appearance fees were finally paid by the respective attorneys for the appellants on March 1, 1946, and March 4, 1946.

It will be noticed that the date of expiration of the ninety-day period within which the appellants, under Rule 12 of the rules of this court, were permitted to perfect their appeals, was February 27, 1946. The records of the clerk of

this court do not reveal when notice of nonpayment of the filing fees and. the indebtedness therefor of appellants' counsel was mailed to them, but the affidavit of one of the counsel recites in this connection

". . . that affiant was of the opinion that it would not be necessary for the defendant to pay the filing fee in the Supreme Court in cases where an appeal was taken In Forma Pauperis, and for that reason did not deposit the $5.00 appearance fee with the Clerk. That on or about the 3rd day of March, he was notified by the Clerk of the Supreme Court that the fee remained unpaid, whereupon affiant paid the $5.00 filing fee out of his own pocket."

Counsel for the other appellant paid his client's five-dollar appearance fee in this court on March 1, 1946, presumably in response to notice similar to that referred to in the portion of the affidavit quoted.

As stated, the ninety-day period expired on February 27th. It is apparent, therefore, that the notices of nonpayment of filing fees did not leave the office of the clerk of this court in time to enable appellants' counsel to remit such fees within the ninety-day period fixed by Rule 12.

The court reporter for the superior court for Franklin county did not complete nor place in the hands of appellants' counsel the statement of facts on appeal until February 26, 1946, which was one day before the expiration of the ninety-day period fixed by court Rule 12 for perfecting appellants' appeal. No explanation for this delay is anywhere suggested in the record, briefs, or arguments, other than the existence of an unusually large, congested volume of appeal cases in Franklin county at that particular time.

On February 21st, counsel for one of the appellants, not having received the statement of facts and realizing that he could not prepare appellant's brief on appeal, have it printed, served, and filed in the supreme court by February 27th, which was the "dead-line date," telephoned the prosecuting attorney for Franklin county and secured his consent to an extension of time to April 10, 1946, within which appellant's opening brief on appeal might be served and filed. This oral agreement between counsel was later reduced to the form of a written stipulation which was signed

by the prosecuting attorney and counsel for the two convicted appellants. It was filed with the clerk of the superior court for Franklin county on March 5, 1946, and was transmitted to and filed with the clerk of this court on March 27, 1946.

The statement of facts was filed in this court on March 1, 1946. The clerk of this court, under paragraph 7 of Rule 12 governing his procedure in such matters, placed the case on the court's docket for automatic dismissal because of lack of jurisdiction resulting from failure of appellants' counsel to perfect their appeals within ninety days after the filing of notices of appeal. No notice of placing the cases on the dismissal docket was forwarded to either of appellants' counsel. The appeals were, accordingly, dismissed on March 22, 1946, by entry of minute order to that effect.

The matter is now before us on petition for vacation of the order of dismissal of the appeals, reinstatement of the appeals, and for extension of time within which appellants may file their opening briefs. The prosecuting attorney of Franklin county has appeared in this court and joined petitioners in this motion.

Rule 12, paragraph (3), Rules of Supreme Court, 18 Wn. (2d) 14-a, which governs the procedure on appeal in criminal cases, provides:

"(3) Strict conformance with the following requirements shall be necessary, and no appeal to the supreme court in a criminal cause shall be effectual unless:

"First, notice of appeal shall have been given in the manner and at the time specified in (1) (a) of this rule;

"Second, within ninety days after giving notice of appeal, appellant shall cause to be filed in the office of the clerk of the supreme court or of the clerk of the superior court:

"(a) The statement of facts or bill of exceptions, when it is necessary for a decision of the case on appeal, showing service on respondent and certified by the judge of the superior court: *Provided,* That the time for certification may be extended by the chief justice of the supreme court or, in his absence, by any judge of that court upon written application made within said ninety-day period and upon a showing that the necessity for additional time for the certification is not due to any lack of diligence on appellant's part. If an extension be granted, the judge so granting it

shall fix the time within which the statement of facts or bill of exceptions shall be certified and the time within which appellant's opening brief shall be served and filed;

"(b) Transcript of record certified by the clerk of the superior court;

"(c) Appellant's opening brief, prepared in accordance with the rules of the supreme court, with proof of service thereof on respondent, unless the time for service and filing be extended as provided in (3) (a) of this rule.

"Third, within ninety days after giving notice of appeal, the appellant shall deposit with the clerk of the supreme court five dollars as that clerk's docket fee, if the appeal is taken by a defendant."

Paragraph (7) of Rule 12 provides:

"(7) If, upon the expiration of said ninety days after giving notice of appeal, the record is not made or fee not paid, all as required by this rule, the clerk of the supreme court shall forthwith, and without the necessity of any notice to appellant or his attorney of record, note the cause upon the calendar of the supreme court for the next motion day as being a cause subject to dismissal, and the supreme court shall dismiss the cause."

That the jurisdictional sections of Rule 12 of the court rule relating to procedure on appeal in criminal cases were not complied with is apparent from the chronological history of the two appeals under consideration, which has been outlined herein. Neither the statement of facts nor appellants' opening briefs were lodged with the clerk of this court for filing within ninety days after the filing of notices of appeal in the superior court. The filing fees were not paid until after the expiration of the ninety-day period.

It is clear that appellants' counsel were not aware of the strict provisions and terms of Rule 12 requiring the perfecting of criminal appeals within ninety days. It is equally clear that none of the counsel involved were familiar with the decisions of this court construing the jurisdictional features of the present Rule 12, and the prior rules of this court covering the same subject. *State v. Currie;* 200 Wash. 699, 94 P. (2d) 754; *State v. Nelson,* 6 Wn. (2d) 190, 107 P. (2d) 1113; *State v. Hampson,* 9 Wn. (2d) 278, 114 P. (2d) 992; *State v. Conners,* 12 Wn. (2d) 128, 120 P.

(2d) 1002. This is demonstrated by their failure to pay the filing fees to the clerk of this court within ninety days, and by their signing and filing in this court a stipulation attempting to extend the time for filing appellants' opening briefs to April 10, 1946. It is further demonstrated by the failure of appellants' counsel to apply to the chief justice of this court for an extension of time within which to secure certification of the statement of facts and to file appellants' opening briefs. However, discussion of counsel's indifference to the rules of this court and of their dereliction in failing to comply with them will not solve our present problem.

Our immediate responsibility is contained in the question: Are the jurisdictional provisions of Rule 12 so absolute that a combination of mitigating circumstances, over which the appellants themselves had no control, will never warrant temporary suspension of the rule in a capital case in order to permit this court to consider an appeal on the merits?

The mitigating circumstances referred to in the query are as follows: The appellants, from the time of their first appearance in court on arraignment, were under the special protection of the court. They were human beings, charged with a capital offense. The court was convinced that they were paupers and without funds or means with which to employ counsel. Their constitutional right to representation by counsel was protected by the court. A lawyer was appointed for each defendant to serve them at the expense of the county. A trial before a jury was accorded to them. Upon the return of verdicts of guilty and the entry of judgment and sentence, they indicated their desire to appeal to this court. The grounds of this appeal had been embodied in extended motions for new trials, which had been argued with thoroughness and considered, with equal thoroughness, by the trial court. Upon a further showing of appellants' inability to bear the expense of appeal, the judge of the superior court entered an order directing the preparation and typing of the statement of facts and the payment therefor by the county. Thus, the appeals, and

all of the rights of the appellants attending their appeals, were peculiarly within the protection of the trial court, as well as within the protection of appellants' counsel.

Following sentence, appellants were removed to jail, leaving the mechanics of their appeals to their counsel. The first step in the course of these appeals, following the filing of notices, was to order the statement of facts. Presumably, this was done. Nothing in the record indicates that it was not done promptly, yet the first invasion of appellants' right to a fair appeal in this matter immediately reveals itself. In the face of a court rule, making the perfecting of the appeals within ninety days jurisdictional, the official court reporter of the superior court from which the appeals had been taken, for reasons wholly unexplained in the record, did not provide the completed statement of facts to appellants' counsel until the eighty-ninth day of the ninety-day jurisdictional period fixed by the court rule. This left one day in which appellants' counsel might prepare, cause to be printed, served, and filed in the superior court for Franklin county, and transmitted to and filed with the clerk of the supreme court of the state of Washington at Olympia, the appellants' opening briefs. There is nothing in the record to indicate that appellants' counsel were responsible for the delay in completion of the statement of facts, yet, without a statement of facts or a bill of exceptions of some character, no appeal could be brought to this court, and, certainly, no brief could be written without reference to the testimony in the record by page number, as required by the rules of practice of this court.

It is our opinion that fairness to the appellants, and due process of law, which embraces the recognition of their right to a fair appeal, as well as a fair trial, impels us to the conclusion that strict and literal adherence to our Rule 12, which requires the filing of the statement of facts and appellant's opening brief in this court on or before the ninetieth day after filing notice of appeal, became a physical impossibility when the statement of facts was not delivered to appellants' counsel until the eighty-ninth day of the jurisdictional period. It is likewise our opinion that

the situation presented by the court reporter's delay in preparing the statement of facts was one over which the appellants, in jail and supposedly under the protection of the court, had no element of personal control. We are likewise of the opinion that the appellants, being paupers as determined by the trial court, were not responsible for the nonpayment of the filing fee in this court, payment of which, under Rule 12, has been made a jurisdictional step in the course of the appeal. We do not feel that the appellants were personally responsible for the failure of their attorneys to make application to the chief justice of this court for extension of time for certification of the statement of facts and the filing of opening briefs.

▆▆▆ The purpose of the rules of practice and procedure adopted by this court is to simplify and facilitate the practice and, wherever possible, to eliminate delay in reaching a final determination of litigation, civil or criminal, on the merits. No rule of this court was ever intended to be an instrument of oppression or injustice or to deprive a litigant of his life, his liberty, or his property without due process of law. This is a fundamental right guaranteed by the supreme law of the land. It would be unthinkable, and abhorrent to judicial reason, to deprive the appellants in the instant case of their day in this court because of the delay of a court reporter in failing to present a statement of facts on appeal in sufficient time to enable it and the appellants' briefs to be filed within the required ninety-day period. To permit them to hang without hearing their appeals because, as paupers, they were unable to pay a five-dollar filing fee to the clerk of this court, is likewise unthinkable. To permit their lawyers' mistakes and indifference to our rules of practice to bar them from the portals of this court, when the court itself is charged with protecting their appeals, would make a mockery of justice.

This is an extreme case, involving as it does the sentence to execution of two prisoners. It is only for this reason that this court has seen fit to exercise its rule-making power in such manner as to suspend its existing rule for the moment

in order to permit the appellants to have their day in this court.

To summarize our views, as expressed herein, and in an endeavor to clarify those views for members of the bar, we wish to state that the sole reason for suspending the strict requirements of our Rule 12 in the instant case is that the appellants were sentenced to forfeit their lives in punishment for their crimes. We are of the opinion that capital cases should not be embraced within the rigid requirements of the rule. This idea is suggested by our Rule 28 (2) which provides as follows:

"Service upon an attorney shall be made by delivering to him personally, or at his office by delivery to his clerk or to the person having charge thereof; or, if his office be not open, or there be no one in charge thereof, at his residence by delivery to some person of suitable age and discretion residing therein; or, if neither of the foregoing methods can be followed, by deposit in the post office to his address, with postage prepaid. *In capital causes, a motion to dismiss an appeal shall be served upon the defendant personally, as well as upon the attorney of record.*" (Italics ours.)

We wish to be clearly understood as holding that the rule announced and the language used herein are applicable only to cases in which the death penalty has been imposed.

We likewise hold that that section of Rule 12 which requires the payment of a five-dollar filing fee to the clerk of this court within ninety days following the filing of notice of appeal, and further providing that the jurisdiction of this court to hear the appeal is conditioned upon the payment of such filing fee, has no application to cases appealed *in forma pauperis*. As applied to all other criminal appeals, Rule 12 stands, and no qualification or relaxation of its rigid requirements will be countenanced in cases other than capital cases and cases appealed *in forma pauperis*.

The order of this court, entered March 22, 1946, dismissing the appellants' appeals, is vacated. The clerk of this court is directed to reinstate their appeals, and the appellants are ordered to serve and file their opening briefs with

the clerk of this court within thirty days following the filing of this opinion.

STEINERT, ROBINSON, JEFFERS, MALLERY, SCHWELLENBACH, and ABEL, JJ., concur.

MILLARD, C. J. (dissenting)—The reasons advanced in the majority opinion for disregard of the rules respecting appeals in criminal cases are that: (1) None of the counsel involved is familiar with the decisions of this court construing the jurisdictional features of the present Rule 12 and the prior rules of this court covering the same subject. (2) Appellants' lack of funds with which to pay the filing fee in this court. (3) Presumption of race prejudice. (4) The more atrocious the offense the defendants are charged with committing, the more lax should be our rules of procedure; that the crime of murder justifies changing "in the middle of the game" the rules to except the accused from operation of the rules or excuse his violation of the rules in that particular instance.

I doubt if counsel for appellants welcome the invidiousness implicit in the statement that none of the counsel is familiar with the decisions of this court or the applicable rules. Be that as it may, ignorance of counsel or client may not excuse disregard of rules which are, or should be, as highly respected as a statute. Times have changed! It now appears that ignorance of the law excuses a defendant or his counsel from the penalties for breach of the law.

There is no statute and I know of no authority under which this court may permit the filing of appeals *in forma pauperis*.

On the hustings the campaign speaker may, to further his political fortunes, indulge in charges of race prejudice on the part of his opponent; but I deem such unsupported charge out of place in a court of appeals for the purpose of justifying departure from well-established rules.

The argument, in effect, that, if the crime committed is so abhorrent as to merit the death penalty, our rules should be less strict, is without merit.

In the case of *State v. Scott*, 20 Wn. (2d) 696, 149 P. (2d)

152, we refused to consider errors predicated on instructions not printed in the brief of appellant and errors concerning instructions relative to which appellant had taken insufficient exceptions. The appellant was convicted of the horrible crime of carnal knowledge of a child. We stated that it might seem that the rules were harsh when applied to a case as serious in its consequences as the one then before us, but we said those rules had been in effect for a long time and were known or should be known to all who seek review of a judgment of the trial court. We stated the purpose of the rules was in aid of the orderly administration of justice, and that, if those rules are to serve the purpose intended, they must be enforced.

In *State v. Currie,* 200 Wash. 699, 94 P. (2d) 754, we said:

"It is true that the court has the power to change and rewrite the rule, but that is a very different thing from excepting a particular individual from its operation or excusing its violation in a particular instance."

In other words, we should not breach our rules "in the middle of the game." In that case, the defendant was convicted of being an habitual criminal and sentenced to confinement in the state penitentiary for life. He attempted to personally conduct his appeal, an undertaking which was beyond his capacity and understanding. We dismissed his appeal because he failed, in his ignorance of rules of procedure, to timely perfect his appeal.

Bad laws and rules can be endured; but the uncertain law or rule—one that shifts and changes each time it is invoked in the courts—"is as sore an evil and as heavy a curse as any people can suffer." *Hole v. Rittenhouse,* 2 Phila. 411, 417.

The instant decision tends, as observed by Mr. Justice Roberts in *Smith v. Allwright,* 321 U. S. 649, 64 S. Ct. 757, 151 A. L. R. 1110, to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only.

Mr. Justice Roberts used the following apt language in his dissenting opinion in *Mahnich v. Southern S. S. Co.,* 321 U. S. 96, 64 S. Ct. 455:

"Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy."

In *State v. Conners*, 12 Wn. (2d) 128, 120 P. (2d) 1002, defendant appealed from conviction of crime of grand larceny. Every step in perfecting the appeal was timely and strictly conformed to the rules of this court except payment of required appearance fee of five dollars. Under the rules, the fee should have been paid on or before the sixtieth day after giving notice of appeal. As the clerk of this court did not receive the filing fee until the sixty-second day after notice of appeal was given, we dismissed the appeal. See, also, *State v. Nelson*, 6 Wn. (2d) 190, 107 P. (2d) 1113.

In *State v. Hampson*, 9 Wn. (2d) 278, 114 P. (2d) 992, defendant was convicted of the crime of murder in the first degree and sentenced to the penitentiary for life. Appellant was thirteen days late in filing an abstract of the record. On that ground, we dismissed his appeal.

In *State v. Domanski*, 9 Wn. (2d) 519, 115 P. (2d) 729, defendant was convicted of being an habitual criminal and sentenced to life imprisonment. We held that his failure to follow the rule of this court requiring the setting out of instructions in the opening brief could not be excused. Although he filed on the day of the argument in this court a document setting out the challenged instructions, we refused to consider them.

In *State v. Schafer*, 154 Wash. 322, 282 Pac. 55, appellant was found guilty of murder in the first degree and the death penalty exacted. We refused to relax the rule which then required filing of bill of exceptions or statement of facts within ninety-day period.

In *State v. Hall*, 185 Wash. 685, 56 P. (2d) 715, defendant appealed from conviction of murder and death sentence. We held that appellant had not substantially complied with the rule that errors assigned but not argued in the brief would not be considered.

In *State v. White*, 40 Wash. 428, 82 Pac. 743, defendant appealed from conviction of crime of murder in the first

degree. Appellant was unable to secure within the time required by the rules a transcript by reason of his poverty. We dismissed the appeal and held that such right could be forfeited by reason of his poverty. See, also, *State v. Harder*, 130 Wash. 367, 227 Pac. 501.

It may seem, as we have observed more than once in our opinions, that the rules which must be followed in perfecting criminal appeals are harsh when applied to a case as serious in its consequences as the one now before us, but an appellant's ignorance or a lawyer's ignorance of the applicable law or rule should not except such individual from operation of the statute or rule or excuse its violation. If lack of funds excused violation of the rules, a large majority of the criminals brought to justice would never be convicted. The money obtained by criminal effort is usually dissipated before the offender is apprehended. The argument that it will be presumed that race prejudice deprived appellants of a fair trial, hardly merits passing notice.

We should not complain in the future of the failure of litigants to comply with our rules, in view of the contempt we have shown for same. See *Dill v. Zielke, ante* p. 246, 173 P. (2d) 977; *In re Whittier's Estate, ante* p. 833, 176 P. (2d) 281.

It would appear that, when John Doe endeavors to prosecute an appeal to this court, we rigorously exact compliance with the conditions prerequisite to jurisdiction, even refusing to read appellant's brief when errors are not assigned therein. When Richard Roe appeals to this court our mood may be such that his noncompliance with all of the rules—jurisdictional and otherwise—will be condoned because, perchance, we may ascertain from a reading of his brief that he sought reversal or modification of the judgment. Is not the purpose of every appeal to obtain a new trial, a modification or reversal of the judgment, or a dismissal of the action if the appellant is the defendant?

I note the observation in the majority opinion that the prosecuting attorney of Franklin county appeared in this court and orally stipulated that the motion of appellants be granted. The prosecuting attorney, who is a recent addi-

tion to the ranks of the legal profession, was elected prosecuting attorney a few months ago. Doubtless, possessed of the spirit of good will that exists between members of our profession, the prosecuting attorney manifested a camaraderie which seldom is present in a criminal action. I doubt that this representative of the state will, in the future, waive jurisdictional prerequisites in a criminal action, as it is suggested in the majority opinion he has done in the case at bar. That fine quality of mercy exhibited by the prosecuting attorney may be commendable, but we have so often said that jurisdiction may not be stipulated that I marvel at the majority in leaning on this reed.

The argument in the majority opinion that the rules should not be so rigorously applied to the more hardened criminal who has committed an atrocious crime, does not appeal to me. The excuses upon which the majority opinion is based are more maudlin than judicial.

Every one accused of crime is entitled to a fair trial. *Appellants had a fair trial.* The orderly administration of justice demands that they be required to conform to the rules the same as any other accused. The people are entitled to expeditious administration of justice in criminal cases. It is clear that appellants had a fair trial, and that there was no race prejudice in the case. The three appellants are guilty of first degree murder, yet the jury, while finding all three guilty, recommended the death penalty against two only. We need fewer stump speeches and quick evenhanded justice to curb the criminally inclined.

The appeals should be dismissed.

SIMPSON, J. (concurring with MILLARD, C. J.)—I concur. The opinion by the majority advises the bar of this state that this court does not have rules.