[No. 31257. Department One. November 22, 1949.]

THE STATE OF WASHINGTON, *on the Relation of The State of Washington, Plaintiff*, v. MAX CHURCH, *as Judge of the Superior Court for Pierce County, Respondent*.[1]

*The Attorney General* and *Jane Dowdle, Assistant*, for relator.

*Bannon, Soule & Krilich, Copeland & Tollefson*, and *E. P. Donnelly*, for respondent.

DONWORTH, J.—This case comes to this court upon a writ of certiorari directed to Honorable Max Church, judge of the superior court of the state of Washington for Pierce county, for the purpose of reviewing the action of that court

[1] Reported in 211 P. (2d) 701.

in issuing a certain order dated November 4, 1949, in the cause entitled "State of Washington v. Laurence H. Meyers, et al." (Pierce county cause No. 30662), requiring the administrator of the Pierce county department of public welfare to produce its records relating to Pete and Marie Charlton and directing that, upon their deposit, the attorneys for the parties in that case were authorized to inspect these records.

It appears from the return of the respondent that, in the criminal action before him, the trial of which is still in progress, ten separate defendants are being prosecuted for the crime of rape. In relator's brief, it is stated that Pete Charlton is the prosecuting witness and Marie Charlton the victim of the alleged crime.

This order contains the following recital:

". . . and it appearing to the Court that the interests of justice require that said file be deposited with the Clerk of the Court for inspection by the attorneys for the State and the attorneys for the defense, . . ."

The respondent judge in his return to the writ, referring to this order, states:

"That in so signing this order the court deemed it necessary that the records be available for its use and the use of the attorneys for the state and the defense in order that the court might properly rule upon questions of privilege and admissibility should any evidence be offered. That in so doing it was and is my intention to accord the records of the department every secrecy compatible to the ends of justice and to give full consideration to any arguments made by the attorney general of the state of Washington, who is personally present in court, actively conducting this case which counsel feels cannot conclude prior to Thursday, November 17, 1949."

This order not having been complied with, the trial court, on November 7, 1949, entered a second order reciting that the administrator had appeared in the chambers of the court and had refused to deliver these records. He was accordingly directed to show cause on November 9, 1949, why he should not be held in contempt for not obeying the lawful order of the court. Thereupon the attorney general

applied to this court for a writ of certiorari to review the order of the trial court of November 4, 1949.

Owing to the necessity of a decision in this matter prior to the conclusion of the trial of the criminal action in the superior court, the case was heard by this court November 12, 1949, and on the same day an order was issued by this court denying the writ of certiorari and stating that an opinion would follow.

It is strenuously urged by relator in its brief and upon the argument that the records of the department of social security are privileged communications under the provisions of chapter 128, Laws of 1941, p. 379 (Rem. Supp. 1941, § 10007-103a *et seq.*), § 5, p. 382, of which provides:

"The rule-making power of the Department of Social Security shall include the power to establish and enforce reasonable rules and regulations governing the custody, use and preservation of the records, papers, files and communications of the State Department of Social Security and the County Welfare Departments. The use of such records, papers, files and communications by any other agency or department of government to which they may be furnished shall be limited to the purposes for which they are furnished. It shall be unlawful except for purposes directly connected with the administration of general assistance, old-age assistance, aid to the blind and aid to dependent children and in accordance with the rules and regulations of the State Department of Social Security for any person or persons to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of, any list, or names of, or any information concerning, persons applying for or receiving such assistance, directly or indirectly derived from the records, papers, files or communications of the state or county or subdivisions or agencies thereof or acquired in the course of the performance of official duties." Rem. Supp. 1941, § 10007-106b [P.P.C. § 917-11].

It is to be noted that, while this statute forbids voluntary disclosures, it does not purport to forbid disclosures made in response to a subpoena *duces tecum* where the contents of the files' and documents referred to in the statute are pertinent to litigation pending in the courts.

A similar statute of Illinois was so construed in a civil action in *Bell v. Bankers Life & Cas. Co.*, 327 Ill. App. 321, 64 N. E. (2d) 204, where the court said:

"Plaintiff insists that the records of the Cook County Bureau of Public Welfare were inadmissible because of the prohibition contained in par. 419, ch. 23, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 18.174], which provides as follows:

" 'Except for purposes directly connected with the administration of pensions, and in accordance with the rules and regulations of the Commission, no person shall solicit, disclose, receive, make use of, or authorize, knowingly permit, participate in, or acquiesce in the use of, any list of names of, or any information concerning, persons applying for or receiving pensions, directly or indirectly derived from the records, papers, files, or communications of the Commission or County Departments or acquired in the course of the performance of official duties. The violation of this provision is a misdemeanor.'

"This prohibition was clearly intended to forbid voluntary disclosures but it was never intended to prevent the disclosure of the contents of official documents pursuant to the compulsion of a subpoena where the contents of such documents are pertinent to a legal inquiry. (*Maryland Casualty Co. v. The Clintwood Bank*, 155 Va. 181, 154 S. E. 492; *Wilson v. United States*, 59 F. (2d) 390.)"

Pursuant to this legislative authority contained in § 5 of the Washington statute above quoted, the state department of social security promulgated a set of rules and regulations of which the following are relied upon by the relator:

"1. NATURE OF INFORMATION DEEMED TO BE CONFIDENTIAL. Names and addresses of persons applying for or receiving public assistance, including lists of such persons, information contained in applications, reports of investigations, reports of medical examinations, correspondence and other records concerning the condition or circumstances from whom, or about whom information is obtained, and including all such information whether or not it is recorded, and records of agency evaluation of such information shall be confidential and may not be used either directly or indirectly except for purposes directly connected with the administration of public assistance.

. . .

"8. PROHIBITION AGAINST RELEASE OF CONFIDENTIAL INFORMATION IN COURT ACTIONS. No employee or representa-

tive of the department shall release any confidential information concerning public assistance applicants or recipients, either by written records or oral testimony in any court proceeding, except where such proceeding involves the administration of the public assistance program. In the event that any employee or representative of the department or any record of the department is subpoenaed, the representative of the department shall answer the subpoena and shall in court plead the regulation and the law safeguarding public assistance information as the basis for withholding such information from disclosure in court."

These regulations were construed by this court in *State ex rel. Haugland v. Smythe,* 25 Wn. (2d) 161, 169 P. (2d) 706, 165 A. L. R. 1295, where it was said:

"It will be noted that the intent of the Federal statute quoted above is to restrict the use or disclosure of such information to purposes directly *connected with* the administration of aid to dependent children, and that the state act empowers the department of social security to establish and enforce *reasonable* rules and regulations for safeguarding official information against disclosure or use thereof except for purposes directly *connected with* the various kinds of public assistance. It will further be noted that the rules and regulations adopted pursuant to the foregoing statutes seek to accomplish the same end, and, anticipating that such records may in certain litigation be subpoenaed, they provide that the officer to whom the subpoena is directed shall appear in court and *plead* such rules and regulations. It is significant that this provision of the rules and regulations does not command or suggest that the officer thus subpoenaed shall in all events *disobey* any order of the court relative to the production of such records and the disclosure of the information contained therein, but only prescribes that the officer shall by proper plea inform the court of the existence and prohibitive requirement of the rules."

As pointed out by this court in the *Haugland* case, neither the statute nor the regulations purport to authorize the administrator of the department of public welfare, or any employee thereof, to disobey any order of the court relative to the production of such records and the disclosure of the information contained therein under the circumstances involved in this case.

We adhere to that interpretation, and since the superior court has found that the interests of justice require that this file be deposited with the clerk of the court, as provided in the order of November 4, 1949, we find no legal justification for the refusal of the administrator of the Pierce county welfare department to comply with this order.

We recognize that there is a substantial difference between the *Haugland* case, *supra,* and the case at bar, since juvenile court trials and the records of juvenile courts are not open to the public, whereas in a criminal prosecution our constitution guarantees the accused a "speedy public trial" (Art. I, § 22, as amended). However, we are of the opinion that the reasoning adopted in the *Haugland* case is applicable here.

It is contended by the relator that the statute (Rem. Supp. 1941, § 10007-103a *et seq.*) was enacted in the interests of the public generally, and particularly for the protection of parties seeking or receiving aid from the welfare department. In this connection, it is argued that, in order for the county welfare department to secure necessary information from recipients and applicants for public assistance, the latter must be assured that the information which they give will be confidential and will not be used against them. Otherwise, it would be impossible for the welfare department to obtain the necessary information in order to carry out its functions.

As we construe the statute and the rules and regulations adopted thereunder, they were not intended to prevent disclosure of the information pursuant to a court order entered under the circumstances shown here. Ten men are now on trial before the superior court charged with a serious crime, for which, in the event they are convicted, they may receive severe penal sentences. The judge presiding at the trial has stated that the interests of justice require the production of the information in the possession of the administrator of the county welfare department and has directed that it be deposited by him with the clerk of

the court for the purposes stated in the order of November 4, 1949. In his return to the writ, the respondent judge states that the purpose of this order was to enable the court to properly rule upon questions of privilege and admissibility if any part of the file should be offered in evidence.

This action of the trial court is necessary in order to accord the accused a fair trial under our state constitution, which guarantees to persons accused of crime the right to have compulsory process to compel the attendance of witnesses in their own behalf (Art. I, § 22 as amended).

We wish it to be distinctly understood that, in deciding this case, we are passing upon only the claim of testimonial privilege presented by the record before us. We merely hold that, under the provisions of the particular statute and the rules and regulations involved in this case, the superior court had power to compel the administrator to comply with its order of November 4, 1949.

The relator makes the further contention that, under the Federal social security act (42 U. S. C. A. §§ 302, 602 and 1202) relating to old age assistance, aid to dependent children, and aid for the blind, but not relating to general assistance, with which we are here concerned, the state plan must provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes connected with the administration of such assistance program.

The relator is apprehensive that the disclosure ordered by the superior court in this case may result in the loss of Federal matching funds for public assistance.

We cannot properly consider this argument, for the reason that it is our duty to protect the rights of persons accused of crime within this state and to see that the inherent power of the superior court to afford them a fair trial in accordance with the provisions of the state constitution shall remain inviolate. Having done this, our function in this case is fully performed.

For the reasons herein stated, the order of the superior court under review in this proceeding is hereby affirmed.

Because of the necessity for prompt disposition of this matter, the remittitur will issue forthwith.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.