[No. 35693. *En Banc.* September 14, 1961.]

GUNDER FOLDEN, *Respondent*, v. HARRY ROBINSON *et al.,*
*Appellants.**

*Reported in 364 P. (2d) 924.

*Parker & Parker* and *Stanley J. Krause*, for appellants.

*Schumacher & Charette*, for respondent.

*The Attorney General* and *John J. Champagne, Assistant, amicus curiae.*

OTT, J.—Gunder Folden was injured October 6, 1958, while he was working in the hold of the fishing vessel "Gary Denn." The vessel was moored at a cannery dock, and one box of bottom fish was to be filled and hoisted up through the hatch by means of a crane which was located on the dock. Folden had filled the box with fish and moved it into position in the hold so that it could be raised onto the dock. A part of Folden's duties was to guide the box as it was being raised so that it would clear through the hatch. When the crane had raised the box to the opening, the box tilted and stuck crosswise in the hatch. The cannery manager, who was operating the electric switch on the crane, was unable to stop the hoisting operation. The impact of the box against the hatch coaming caused the boat to sway, and the hoisting operation to cease functioning. Folden was found lying in the hold of the boat. It was not known what caused him to fall. He was taken to a hospital and treated for a head injury.

He commenced this action against the owners of the cannery and dock and the operator of the crane for his damages, alleging that the defendants were negligent in failing to have on the crane an electric switch which was properly insulated against moisture and which met the standards of the National Electrical Code, and that his injury was occasioned as a direct result of the failure of the electric switch to function properly.

The defendants' answer denied negligence, and affirmatively pleaded both contributory negligence on the part of the plaintiff, and assumption of the risk of the employment.

From a judgment based upon the verdict of a jury in favor of the plaintiff, the defendants have appealed.

The appellants assign error to instructions Nos. 9, 10, and 11, contending that they do not correctly state the law of the state of Washington.

RCW 19.28.010 provides in part:

"From and after the taking effect of this chapter all wires and equipment, and installation thereof, . . . shall be in strict conformity with the provisions of this chapter, the statutes of the state of Washington, the rules and regulations issued by the department of labor and industries under the authority of the state statutes, and *shall be in conformity with the most approved methods of construction* for safety to life and property. The regulations as laid down in the national electrical code, as approved by the American Standards Association, and in the national electrical safety code, as approved by the American Standards Association, and other installation and safety regulations approved by the American Standards Association *shall be prima facie evidence of such most approved methods*; . . ." (Italics ours.)

RCW 19.28.060 provides:

"On or before the first day of January, 1936, the director of labor and industries shall obtain an authentic copy of the rules and requirements of the national electrical code as approved by the American Standards Association, and an authentic copy of any applicable rules, regulations and standards of the National Bureau of Standards of the U. S. Department of Commerce, and the rules, regulations and

standards of the Underwriters' Laboratories, Inc., prescribing rules, regulations and standards for electrical materials, devices, appliances and equipment, and shall annually thereafter on or before the first day of January obtain a new set of such rules, regulations and standards including therein any modifications and changes that have been made during the previous year in such rules, regulations and standards. All such rules, regulations and standards shall be kept on file in the office of the director of labor and industries; compliance with such rules, regulations and standards shall be prima facie evidence of compliance with the provisions of this chapter. The director of labor and industries upon request, shall deliver to all persons, firms, or corporations licensed under the provisions of this chapter, a certified copy of such rules, regulations and standards. Any printed copy of such rules, regulations and standards certified by the director of labor and industries as being a full, true and correct copy of such rules, regulations and standards on file in his office shall be accepted in any court of the state of Washington as conclusive evidence of such approved methods, regulations and standards."

At the trial, exhibit No. 3, being the National Electrical Code as approved by the American Standards Association on September 4, 1956, was offered in evidence. The offer of the exhibit was objected to by appellants upon the following grounds:

"Now, your Honor, this section of the statute was passed in 1935. This is a code of 1956. It might be argued that the State contemplated that as codes were later adopted they would automatically become effected by the statute, but if the statute is so interpreted then it is clearly unconstitutional because you can't delegate to a private institution the powers to make rules and regulations that become and have in force as State law. It is an unlawful delegation of legislative power."

The exhibit was admitted.

Instructions Nos. 9, 10, and 11 incorporate language from §§ 3705, 3804, and Art. 100, respectively, of the National Electrical Code of 1956, as follows:

Instruction No. 9: "A law of the State of Washington pertaining to switch boxes on electric hoists provides:

" 'In damp or wet locations, boxes and fittings shall be so placed and equipped as to prevent moisture or water

from entering and accumulating within the box or fitting. Boxes and fittings installed in wet locations shall be weatherproof.' "

Instruction No. 10: "A further law of the State of Washington pertaining to electric switches provides:

" 'If a switch or circuit-breaker is in a wet location or outside of a building, it shall be enclosed in a weatherproof enclosure.' "

Instruction No. 11: "You are instructed that for the purposes of these instructions, the law of the State of Washington pertaining to electrical equipment and installations contains the following definitions:

" 'Weatherproof: So constructed or protected that exposure to the weather will not interfere with its successful operation.'

" 'Damp Location: A location subject to a moderate degree of moisture, such as some basements, some barns, some cold storage warehouses, and the like.'

" 'Wet Location: A location subject to saturation with water or other liquids, such as locations exposed to weather, washrooms and garages, and like locations.' "

The appellants' exception to instruction No. 9 was as follows:

"The exception to this instruction is based upon two grounds: One, that *there is no law in the State of Washington which makes this the law of the State.* It is a provision in the Electrical Code which has been put in evidence, but the statute section 19.28.010 and 19.28.060, R.C.W., referring to the National Electrical Code, *does not make the Electrical Code the law of the State of Washington,* and does not purport to do so. All the statute does is to provide that if you make, put in electrical appliances it shall be *prima facie evidence* that you follow the most approved methods if you comply with the code, but it does not say and does not purport to say that if you do not comply with the code that you have violated per se any statute.

"The further reason in excepting to the Court's Proposed Instruction No. 9 is that the evidence conclusively shows by plaintiff's own witnesses that this accident was not caused because this switch was in a damp or wet location. It is obvious that if the rule as set out in Instruction No. 9

is applicable at all it was designed to provide for waterproof switches, and there is no evidence that this accident occurred because the switch was not waterproof, and all of the evidence is to the contrary. Plaintiff's own experts testified that it was not caused by water in the switch." (Italics ours.)

Similar exceptions were taken to instructions Nos. 10 and 11.

 Respondent first contends that appellants' exceptions to the instructions were insufficient to apprise the court of the claimed error and, therefore, the alleged error cannot be considered on appeal. As indicated above, appellants first apprised the court that the National Electrical Code had not been adopted by the legislature as the law in this state at the time exhibit No. 3 was admitted in evidence, and again when the appellants informed the court, at the time the proposed instructions were being considered, that instructions Nos. 9, 10, and 11 did not contain the law of this state. The record does not sustain respondent's contention that the exceptions to the instructions were insufficient to apprise the court of the specific legal objection relied upon.

Instructions Nos. 9, 10, and 11 do not state the "law of the State of Washington." The respondent contends that, by the quoted sections of the statute, the legislature adopted the National Electrical Code as the law of this state by reference. An analysis of these statutes does not support this contention.

RCW 19.28.010 provides, *inter alia,* that proof of construction complying with the regulations contained in the National Electrical Code shall be prima facie evidence of compliance with the most approved safety structural methods.

RCW 19.28.060 provides that the director of labor and industries is to keep on file a current copy of the National Electrical Code, as amended, and that proof of compliance with the code shall be prima facie evidence "of compliance with the provisions of this chapter."

 The director of labor and industries has kept the code on file in accordance with the requirement of the act. The legislature has the power to enact laws which create rules of evidence. *State v. Sears,* 4 Wn. (2d) 200, 215, 103 P. (2d) 337 (1940). The quoted sections of the statute enact a rule of evidence whereby one who proves compliance with its provisions has presumptively established that he has conformed with one of the most approved methods of construction.

The legislature, by requiring that a current copy of the National Electrical Code, together with the amendments thereto, be on file in the office of the director of labor and industries for the purposes defined in the act, did not thereby adopt the code as the law of this state. The act adopts this standard of construction as an approved standard. There are other standards that would also meet the test of construction.

 When the court instructed the jury that the quoted sections of the National Electrical Code constituted the statutory test of construction required by the laws of the state of Washington, it committed prejudicial error.

Since this cause is remanded for a new trial, we deem it advisable to consider two of appellants' remaining assignments of error.

The respondent testified that because of his injuries he was unable to pursue his regular occupation. On cross-examination, he was asked if he had not made a written application for unemployment compensation, in which he stated that he could perform his usual occupation and would accept such work. He stated that he did not remember that he had signed anything. No request was made that the witness be required to refresh his memory by an examination of the record which was available to him.

The appellants subpoenaed *duces tecum* the acting commissioner and the local manager of the state department of employment security, requiring them to produce

" . . . all of the records of the Unemployment Compensation Division and the Employment Service Division

of the Employment Security Department of the State of Washington involving Gunder Folden for the period from October 5, 1958 to May 2, 1960, filed in the Aberdeen, Washington office, . . ."

The attorney general appeared specially and moved to quash the subpoena. Appellants assign error to the order granting the motion to quash.

RCW 50.12.110 provides in part:

"Information obtained from employing unit records under the provisions of this title or obtained from any individual pursuant to the administration of this title *shall be confidential and shall not be published or be open to public inspection.* . . ." (Italics ours.)

Appellants contend that, notwithstanding the legislative mandate forbidding the publication of any information contained in these records, our decisions construing similar statutes are to the contrary, citing *State ex rel. State v. Church,* 35 Wn. (2d) 170, 211 P. (2d) 701 (1949) [county welfare records], and *Sherman v. Mobbs,* 55 Wn. (2d) 202, 347 P. (2d) 189 (1959) [department of labor and industries records]. We do not agree.

In the *Sherman* case, we did not pass upon the question. We there stated [p. 207]:

"However, we need not decide this question now, for we do not think the record supports the plaintiff's contention that defense counsel sought to introduce this evidence, knowing that the court would reject it. . . ."

In the *Church* case, we held that the legislative prohibition must yield to the constitutional right of those accused in criminal actions to have compulsory process to compel the attendance of witnesses in their own behalf. We there stated [p. 176]:

"We wish it to be distinctly understood that, in deciding this case, we are passing upon only the claim of testimonial privilege presented by the record before us. . . ."

It is clear that, in enacting RCW 50.12.110, the legislature intended to establish a rule of evidence making the records of the department of employment security confidential. *State v. Sears, supra.* The appellants do not assert

any constitutional ground to justify the production of these confidential records. The rule in the *Church* case is, therefore, not applicable. The subpoena *duces tecum* was properly quashed.

Appellants further contend that the trial court erroneously withdrew the issue of contributory negligence from the jury.

■ The respondent testified that "it was my job to line it [the box] up with the hatch coaming, keep it from hitting." The record discloses that the box did tilt, strike the coaming, and become stuck in the hatch opening, which established a prima facie case of negligence. The respondent's testimony that the crane raised the box at a speed which prevented him from performing his duty presented an issue of fact for determination by the jury. The court erred in withdrawing the issue of contributory negligence from the jury.

The judgment is reversed, and the cause remanded with instructions to grant a new trial. Costs shall abide the final determination of the cause.

FINLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

DONWORTH, J. (concurring in the result)—In my opinion it is not necessary to pass upon the validity of the subpoena *duces tecum* served on the officials of the state department of employment security.

The information which appellant thereby sought to obtain was readily available *to respondent* without any subpoena *duces tecum.*

If on the new trial respondent testifies again that he has no knowledge as to how much unemployment compensation he drew during the material period following his injury, the trial court may compel respondent to produce such information as the court deems pertinent to the issues. He has access to his own records in the department of employment security.

The materiality of this information is apparent from the following portion of appellant's testimony on cross-examination:

"Q. Do you know how much money you drew for unemployment compensation? Do you have the figures on that? A. No, I have not. Q. When did you stop drawing unemployment compensation? A. It was until February of this year. Q. So you drew it up until February of this year, and when you weren't working you were drawing unemployment compensation? A. Yes, sir. Q. Then you quit drawing in February of this year because you went to work for somebody? A. Yes, sir. Q. So all the time since this accident you either have been working and drawing wages from somebody or drawing unemployment compensation, is that correct? A. No, sir. Not all the time. Most of the time."

A somewhat analogous situation was before us in *Randa v. Bear,* 50 Wn. (2d) 415, 312 P. (2d) 640 (1957), where the cross-complainant sued on a medical service contract for hospital services rendered her. She declined to testify as to what her doctor had said and done in treating her, claiming the physician-patient privilege. The trial court sustained her objection to testifying as to these matters. In reversing the judgment in her favor, we held that, by filing her cross-complaint in which she sought to recover on her medical service contract, she had waived the privilege.

The principal object of a lawsuit is to present *all* material, competent evidence to the trier of the fact for decision on the factual issues. In the present case respondent, by commencing this action for personal injuries, was obligated to produce all material information available to him bearing on his physical condition between the date of the accident and the time of trial. In my opinion he should not again be permitted to suppress material evidence by testifying that he does not have the information as to how much money he drew for unemployment compensation.

In remanding the case, I would make appropriate reference to this matter in the opinion so that both parties will receive a fair trial as well as a new trial.

ROSELLINI, FOSTER, and HUNTER, JJ., concur with DONWORTH, J.