[No. 5277-0-III. Division Three. May 17, 1984.]

CRANE & CRANE, INC., *Respondent,* v. C & D
ELECTRIC, INC., *Appellant.*

*Michael C. Geraghty* and *Turner, Stoeve, Gagliardi & Goss,* for appellant.

*Robert W. Burns* and *Burns & Ricketts,* for respondent.

THOMPSON, J.—C&D Electric, Inc. (C&D), appeals the trial court's award to Crane & Crane, Inc. (Crane), under the Consumer Protection Act (CPA). Crane cross–appeals.

Mr. Crowder owned Crowder Refrigeration and, along with Mr. Davisson, owned C&D, a union electrical shop. Mr. Crowder also did business as Mid–Valley Electric, a nonunion shop. Crane's fruit packing plant was having trouble with wiring which supplied power to one of its

packing lines. Crane called C&D to repair the problem. C&D had done work for Crane in the past. C&D sent Mr. Carpenter who told a Crane employee he was from C&D, but in fact Mr. Carpenter worked for Mid–Valley Electric, the nonunion shop.

The electrical problem involved arcing in a section of aluminum busway. Busway is a prefabricated electrical conduit system designed to take the place of conduit and wires. Mr. Carpenter cut away two pieces of the aluminum covering and rigged a bypass of the defective area, but he did not replace the covering. He also replaced a 100–amp circuit breaker with another 100–amp circuit breaker. Testimony indicates he should have used a 70–amp breaker. A few days after the repair, a fire destroyed Crane's packing shed. The fire started at night after operations for the day had ceased.

Crane sued C&D alleging negligence and breach of warranty, and shortly before trial, Crane amended its complaint to add allegations of unfair or deceptive acts in violation of the Consumer Protection Act. Specifically, Crane alleged C&D had made several false representations regarding experience and skill.

The negligence action was tried to the jury and the consumer protection claim to the court. The jury returned a defense verdict for C&D and Crane's motion for a judgment notwithstanding the verdict or a new trial was denied. The court then ruled in Crane's favor on the CPA claim. C&D appeals and Crane cross–appeals.

The first issue is whether the trial court erred in finding C&D violated the CPA. The trial court relied on the test set out in *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980):

> [I]n order for a private individual to bring an action under RCW 19.86, the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest.

The public interest requirement can be satisfied if an applicable statute contains a specific legislative declaration

of public interest. *Anhold v. Daniels, supra; Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 649 P.2d 828 (1982). Without such a declaration:

> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold,* at 46. Since the alleged misrepresentations do not involve violation of any statute, C&D's conduct must come under the 3-part *Anhold* test of public interest. C&D admits its conduct was within trade or commerce, but contends the other elements are not satisfied. Each complained of action will be analyzed in view of the remaining *Anhold* requirements.

In its telephone book yellow pages ad, C&D falsely represented it was a specialist in warehouse and commercial wiring with over 12 years' experience. On its business card, C&D falsely represented it was a subsidiary of Crowder Refrigeration. Though the trial court found these acts induced Crane to hire C&D, the evidence does not support this finding. Barclay Crane, Larry Humborg, and Francis Crane all testified C&D was called because that was the electrical shop usually called. Absent evidence of inducements, the false representations cannot be the basis for allowing a recovery under the CPA. *Haner v. Quincy Farm Chems., Inc., supra.*

Mr. Carpenter falsely represented he was an employee of C&D when in fact he was an employee of Mid–Valley. But again, there is no evidence or finding that this false representation induced Crane to hire Mr. Carpenter. Without inducement, there can be no CPA claim. *Haner v. Quincy Farm Chems., Inc., supra.*

Finally, Mr. Carpenter told Mr. Humborg the work was safe and legal. The trial court found the work was not done

properly or legally because Mr. Carpenter had used an improper circuit breaker and failed to replace the protective covering on the busway. There is no finding C&D relied on this representation. But even if we assume inducement was shown, there was no evidence of potential for repetition. Absent evidence of similar past occurrences or an act with a stronger likelihood of recurrence, we cannot find a potential for repetition necessary to satisfy the public interest requirement. *Compare Rouse v. Glascam Builders, Inc.,* 101 Wn.2d 127, 677 P.2d 125 (1984) (isolated incident with condominium builder) *with McRae v. Bolstad,* 101 Wn.2d 161, 676 P.2d 496 (1984) (misrepresentations in the sale of a house) *and Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 675 P.2d 193 (1983) (unauthorized practice of law in course of escrow business). As stated in *Lightfoot v. MacDonald,* 86 Wn.2d 331, 333, 544 P.2d 88 (1976):

> It is the obvious purpose of the Consumer Protection Act to protect the public from acts or practices which are injurious to consumers and not to provide an additional remedy for private wrongs which do not affect the public generally.

We find none of the complained of acts satisfy all of the requirements of *Anhold v. Daniels, supra.*

Crane urges this court to find a per se violation of the Consumer Protection Act. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) is a leading case on per se violations. At page 358, the court said:

> In *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972), we held that what is illegal and against public policy is per se an unfair trade practice within the ambit of RCW 19.86.020. . . . The *Reader's Digest* test is twofold: (1) is the action illegal, *i.e.,* is it unlawful; and (2) is it against public policy as declared by the legislature or the judiciary?

The appellate courts have listed four requirements for per se violations:

> (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of

damages sustained; and (4) that they were within the class of people the statute sought to protect. *Magney v. Lincoln Mut. Sav. Bank,* 34 Wn. App. 45, 57, 659 P.2d 537 (1983) (quoting *Wilkinson v. Smith,* 31 Wn. App. 1, 9, 639 P.2d 768 (1982)); *see also St. Paul Fire & Marine Ins. Co. v. Updegrave,* 33 Wn. App. 653, 656 P.2d 1130 (1983). Crane contends the wiring was done in violation of a pertinent statute or regulation, that it was the cause of the fire and that Crane was within the class to be protected.

The first question is whether there is a pertinent statute. To constitute a per se violation, the statute violated must contain a specific declaration of public interest. *Haner v. Quincy Farm Chems., Inc., supra; Anhold v. Daniels, supra.* Crane contends RCW 19.28, which governs electricians and electrical installations, is a "public interest statute". However, it does not contain a *specific* declaration of public interest. The statute does provide:

All wires and equipment, and installations thereof, that convey electric current and installations of equipment to be operated by electric current, in, on, or about buildings or structures, . . . shall be in strict conformity with this chapter, the statutes of the state of Washington, and the rules issued by the department, and shall be in conformity with approved methods of construction *for safety to life and property.*

(Italics ours.) RCW 19.28.010. The language "for safety to life and property" implies a public interest is involved, but it is not the clear statement of public interest contained in other statutes. *Compare, e.g.,* RCW 48.01.030 (insurance); RCW 46.70.005 (motor vehicle dealers); *and* RCW 19.27.020 (state building code). At least one appellate case glossed over the specific declaration requirement and found the statutory scheme regarding real estate brokers, RCW 18.85, was obviously designed to protect the public interest, even though there was no "specific declaration". *Nuttall v. Dowell,* 31 Wn. App. 98, 107–08, 639 P.2d 832 (1982). Arguably, the electricians statute similarly affects the public interest.

■ However, the recent *Haner* opinion lays the issue to rest:

> The rule is this: unless there is a "specific legislative declaration" of a public interest, the public interest requirement of RCW 19.86.090 is not per se satisfied even though in engaging in an unfair or deceptive act or practice in the conduct of trade or commerce (RCW 19.86.020) the defendant violates a statute. Where the specific public interest has not been declared legislatively, it must be established by proving each of the three parts of the public interest test announced in *Anhold* and previously set forth in this opinion.

*Haner v. Quincy Farm Chems., Inc., supra* at 762. (*Haner* involved the U.C.C.) It is interesting to note that in *McRae v. Bolstad,* 101 Wn.2d 161, 676 P.2d 496 (1984), the court affirmed the Court of Appeals, using the 3–part *Anhold* test to establish the public interest requirement, but in contrast, the appellate opinion had followed the *Nuttall* analysis. *See McRae v. Bolstad,* 32 Wn. App. 173, 646 P.2d 771 (1982). Since RCW 19.28 does not contain a *specific* declaration of public policy, the violation of this statute will not support a per se Consumer Protection Act claim.[1]

Having ruled there is no violation of the Consumer Protection Act, we need not address C&D's remaining issues concerning damages and attorney fees.

Crane raises several issues on cross appeal pertaining to the adverse result in the jury trial on its negligence claim.

First, Crane contends the trial court erred in instructing the jury. The jury was instructed that violations of certain statutes and regulations are negligence as a matter of law and that the National Electrical Code was such a regulation. *See generally* WPI 60.01. Crane contends the court should have given an instruction directing a verdict on negligence because C&D admitted it violated the National

---

[1]Even if we found the statute satisfied the declaration of public interest requirement, there was no violation of state law. See discussion regarding *Folden v. Robinson,* 58 Wn.2d 760, 364 P.2d 924 (1961).

Electrical Code.[2] Even assuming the violations were admitted, a directed verdict by giving the proposed instructions would not have been proper. In fact, the instructions as given were erroneous.

■ The National Electrical Code is not the law of the State of Washington. *Folden v. Robinson,* 58 Wn.2d 760, 364 P.2d 924 (1961). *Folden* involved a negligence action and the trial court instructed that sections of the National Electrical Code were laws of the State of Washington. The Supreme Court reversed. After reading RCW 19.28.010 and .060[3] the court said:

---

[2]Proposed instruction BB:
"The negligence of the Defendant C&D Electric, Inc. has been established. The plaintiff has the burden of proving what damages were proximately caused by the defendant's negligence."

[3]RCW 19.28.010 (Laws of 1935, ch. 169, § 1, p. 574):
"From and after the taking effect of this act all wires and equipment, and installation thereof . . . shall be in strict conformity with the provisions of this act, the statutes of the State of Washington, the rules and regulations issued by the department of labor and industries under the authority of the state statutes, and shall be in conformity with the most approved methods of construction for safety to life and property. The regulations as laid down in the national electrical code, as approved by the American standards association, and in the national electrical safety code, as approved by the American standards association, and other installation and safety regulations approved by the American standards association shall be prima facie evidence of such most approved methods; . . ."
RCW 19.28.060 (Laws of 1935, ch. 169, § 10, p. 583):
"On or before the first day of January, 1936, the director of labor and industries shall obtain an authentic copy of the rules and requirements of the national electrical code as approved by the American Standards Association, and an authentic copy of any applicable rules, regulations and standards of the National Bureau of Standards of the U.S. department of commerce, and the rules, regulations and standards of the Underwriters' Laboratories, Inc., prescribing rules, regulations and standards for electrical materials, devices, appliances and equipment, and shall annually thereafter on or before the first day of January obtain a new set of such rules, regulations and standards including therein any modifications and changes that have been made during the previous year in such rules, regulations and standards. All such rules, regulations and standards shall be kept on file in the office of the director of labor and industries; compliance with such rules, regulations and standards shall be prima facie evidence of compliance with the provisions of this act. The director of labor and industries upon request, shall deliver to all person [sic], firms, or corporations licensed under the provisions of this act, a certified copy of such rules, regulations and standards. Any printed

The quoted sections of the statute enact a rule of evidence whereby one who proves compliance with its provisions has presumptively established that he has conformed with one of the most approved methods of construction.

The legislature, by requiring that a current copy of the National Electrical Code, together with the amendments thereto, be on file in the office of the director of labor and industries for the purposes defined in the act, did not thereby adopt the code as the law of this state. The act adopts this standard of construction as an approved standard. There are other standards that would also meet the test of construction.

When the court instructed the jury that the quoted sections of the National Electrical Code constituted the statutory test of construction required by the laws of the state of Washington, it committed prejudicial error.

*Folden,* at 766. We realize RCW 19.28.060 has been amended since *Folden,* and that pursuant to the amendment, the Director of the Department of Labor and Industries has adopted the code as a regulation. *See* Laws of 1965, 1st Ex. Sess., ch. 117, § 2, p. 2098. However, the amendments do not change the language of the *statutes* which were central to the holding of *Folden.* Therefore, violation of the code is not negligence per se. Although the court erroneously instructed that violations of the National Electrical Code were negligence per se, this is not prejudicial to the complaining party. The court correctly denied a directed verdict on negligence.

Crane also argues the court erroneously refused the proposed instructions which stated in essence the plaintiff did not have to prove its case with certainty. However, the jury was given a standard instruction on burden of proof. *See* WPI 21.01. Further instructions as to the burden of proof were justifiably refused as repetitious.

---

copy of such rules, regulations and standards certified by the director of labor and industries as being a full, true and correct copy of such rules, regulations and standards on file in his office shall be accepted in any court of the State of Washington as conclusive evidence of such approved methods, regulations and standards."

 Crane next contends the court should have granted it a judgment notwithstanding the verdict or a new trial because the evidence overwhelmingly favored a plaintiff's verdict.

> A motion for a judgment n.o.v. should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. All evidence must be viewed in the light most favorable to the party against whom the motion is made. There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—*i.e.*, evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation.

(Citations omitted.) *Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980), *quoted with approval in Brashear v. Puget Sound Power & Light Co.,* 100 Wn.2d 204, 208–09, 667 P.2d 78 (1983). Crane provided considerable evidence in support of its case, including evidence of physical facts. Nevertheless, the experts disagreed as to the cause of the fire. There was evidence the electrical line was not drawing current at the time of the fire and some of Crane's experts agreed current was necessary to start the fire. Because there was a difference of expert opinion as to the cause of the fire, a reasonable person could have found the wiring was not the cause. There was sufficient evidence to support the verdict and the trial court did not err in refusing to grant a judgment n.o.v.

Crane also contends the court should have granted a new trial and sets out several grounds in support of this motion.

First, it asserts there was no evidence or reasonable inference to justify the verdict. *See* CR 59(a)(7). As discussed above, there was conflicting testimony as to the cause of the fire. The jury was entitled to believe C&D's experts and to find in C&D's favor.

Crane also suggests there should have been a directed verdict on negligence. In addition to the violation of the National Electrical Code addressed at length above, Crane

points to several other allegedly negligent acts. Although each may have justified a favorable jury verdict, none necessitated a directed verdict in Crane's favor.

■ A third basis for a new trial was alleged jury misconduct. *See* CR 59(a)(2). Shortly after retiring, the jury submitted four questions to the court, including inquiry as to an insurance settlement. In response, the court instructed, "You are to decide this case solely on the evidence presented in the trial and the court's instructions of law." The jury is presumed to follow the court's instructions. *State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). Counsel's speculation the jury did not follow this instruction does not justify a new trial. We also note the only reference to insurance was in *plaintiff's* exhibit 39. If the jury was unduly influenced by the reference to insurance, it was Crane's invited error.

■ In summary, we find none of Crane's grounds for a new trial sufficient. The trial court did not abuse its discretion. Finally, Crane urges this court to affirm the trial court on the alternative theory of breach of warranty. The trial court will not be reversed if its decision can be sustained under any theory within the pleadings *and* proof. *Retail Clerks Local 629 v. Christiansen,* 67 Wn.2d 29, 406 P.2d 327 (1965); *I–5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 645 P.2d 716 (1982). Breach of warranty was included in the pleadings. However, there are no findings C&D breached its warranty or, if it did, that the breach caused damages. The silence of the trial court on a material issue of fact must be interpreted as a finding against the party who bears the burden of proof on that issue. *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.,* 32 Wn. App. 32, 645 P.2d 1122 (1982). No exception was taken to the absence of a finding in the trial court. In addition, Crane did not propose an instruction on this issue. This court will not make alternative findings of fact as a substitute for that which should have been done in the trial court.

Finally, Crane contends the trial court should have adjusted its damage award for inflation. We need not reach this issue.

The judgment of the trial court is affirmed in part and reversed in part.

GREEN, A.C.J., and McINTURFF, J., concur.

Review denied by Supreme Court July 13, 1984.