[No. 18947-6-I.   Division One.   June 20, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH CONRAD HARRIS, *Appellant.*

*John Christiansen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Daniel Kinerk, Deputy,* for respondent.

SWANSON, J.—Joseph Harris appeals from his conviction for attempted first degree rape. Harris contends the trial court erred in admitting the testimony of his mental health counselor.

By amended information, Joseph Harris was charged with attempted first degree rape. He entered pleas of not guilty and not guilty by reason of insanity. Following a jury trial on March 31 to April 3, 1986, he was found guilty as charged.

On January 9, 1986, 71-year-old Bessie Lay was home alone, working on a quarterly report for her church. At about 4 p.m., she answered a knock at the front door and discovered the defendant, whom she recognized as the brother of her next-door neighbor.

Harris, whom Lay described as "very calm," asked to use the telephone. Lay did not want Harris to enter the house because he smelled of urine, so she brought the telephone to the door. When Harris could not remember the number he wished to call, he asked Lay whether she had any coffee or cigars. When Lay replied that she did not, Harris asked for a glass of water.

Lay brought a glass of water to the door. After drinking the water, Harris requested a second glass. As Lay was returning to the front door with the water, Harris entered the house. He came up to Lay, gave her a "bear hug," and said, "I want a piece" and "Where's your bed?" Harris then began dragging Lay, who was screaming and struggling, through the living room toward the kitchen. As he dragged her, Harris removed Lay's slacks and shoes and struck and scratched her about the head. After 10 minutes, apparently frustrated with his inability to remove Lay's undergarments, Harris left the house.

After Harris left, Lay composed herself, ate dinner, and finished her work for the church. Later that evening, she spoke with Harris' sister, who called John Frady, Harris' mental health counselor at Harborview Hospital. The next morning, Frady met with Lay at the neighbor's house. After the meeting, the police were informed about the attack.

When Frady returned to Harborview, Harris was waiting and approached him in the lobby. Harris then spoke to Frady about the attack. At trial, Harris' counsel objected to Frady's testimony, arguing that any communications were privileged by analogy to the psychologist/client privilege.

Prior to ruling, the trial judge listened to Frady's testimony outside the jury's presence. Frady explained that he was a "mental health practitioner" with a B.A. in psychology and had been counseling Harris for about 1 year. Frady emphasized that his counseling duties were directed primarily to assisting clients with "day–to–day problem solving," *i.e.,* landlord disputes, budgeting, and taking medication. Although Frady acknowledged that he fulfilled the functions of a psychologist "to some extent," his duties involved "treatment" only in a broad sense. Frady stated that there was an understanding that conversations with clients were confidential to some extent, but that "it's always been spelled out though with our clients that if they break the laws that . . . I can't keep that secret but that I have to tell somebody about that crime."

After listening to Frady's testimony, the trial court overruled the objection, finding that Frady was not a licensed psychologist and that Harris had understood that conversations involving illegal activity were not confidential.

Harris, whom Frady described as anxious and nervous, reported that he had done a "grave thing" and had tried to rape an old woman. Harris said that Lay had been "tempting him for a long time." Harris also talked about leaving for Texas, a technique he used, according to Frady, to avoid facing problems. After about 30 minutes, police arrived and arrested Harris.

Officer Debra Backstrom testified that after she had arrested Harris and informed him of his *Miranda* rights, Harris said he was sorry about the attack and was glad to be going to jail, as he was afraid he might try to rape again. Harris made similar statements to another officer when he arrived at the precinct station.

At trial, the defense presented testimony by Dr. Brian Coleman, a psychiatrist who examined Harris on March 9, 1986. Coleman diagnosed Harris as suffering from "schizophrenia, chronic paranoid type." Harris reported to Coleman that "voices" had told him to rape Lay and that his sister had set him up. Coleman concluded that at the time of the attack, Harris had been able to distinguish right from wrong, but that his psychotic symptomology had prevented Harris from understanding clearly the nature of his acts.

In rebuttal, the State presented the testimony of Dr. John Heinz, a psychologist at Western State Hospital. After examining Harris on March 26, 1986, Heinz agreed that Harris suffered from schizophrenia, but concluded that his thinking had not been so impaired as to prevent Harris from perceiving the nature and quality of his acts and that he had also been able to distinguish right from wrong.

The sole question raised on appeal is whether the trial court erred in admitting the testimony of John Frady, a "mental health practitioner" and Harris' counselor at the Harborview Mental Health Center. Harris maintains that by reason of its incorporation of the confidentiality requirements of RCW 71.05.390, former RCW 71.24.035(4)(h) creates an evidentiary privilege for all mental health counselor/client communications in programs governed by the Community Mental Health Services Act (RCW 71.24).

RCW 71.24, the Community Mental Health Services Act (CMHSA), establishes a system of comprehensive mental health programs designed to provide mental health services for those residents of the state "who are acutely mentally ill, seriously disturbed, or chronically mentally ill . . ." RCW 71.24.015(1); *see also Peninsula Counseling Ctr. v. Rahm,* 105 Wn.2d 929, 719 P.2d 926 (1986). Harborview Mental Health Center, which provided counseling for Harris, is subject to the provisions of the CMHSA.

Harris maintains that the following provision establishes a testimonial privilege in his favor, precluding admission of Frady's testimony:

[The secretary of social and health services shall]

(h) Develop and maintain an information system to be used by the state and counties which shall include a tracking method which allows the department to identify mental health clients' participation in any mental health service or public program. The information system shall not include individual patient's case history files. *Confidentiality of client information and records shall be maintained as provided in RCW 71.05.390 . . .*

(Italics ours.) Former RCW 71.24.035(4)(h).[1] RCW 71.05, among other things, establishes procedures for voluntary and involuntary commitment. RCW 71.05.390 provides that all "information and records compiled . . . in the course of providing services . . . shall be confidential." Disclosure of such information is permitted only under certain narrowly drawn exceptions. RCW 71.05.390(10) provides in pertinent part that

The fact of admission, as well as all records, files, evidence, findings, or orders made, prepared, collected, or maintained pursuant to this chapter shall not be admissible as evidence in any legal proceeding outside this chapter without the written consent of the person who was the subject of the proceeding.

RCW 71.05, however, expressly provides for a compulsory waiver of the physician–patient privilege under certain circumstances in involuntary commitment proceedings. *See* RCW 71.05.250; *In re R.,* 97 Wn.2d 182, 641 P.2d 704 (1982).

Harris maintains that the reference in former RCW 71.24.035(4)(h) to RCW 71.05.390 creates a broad mental health counselor/client testimonial privilege, extending, in effect, the psychologist–patient privilege.[2] Harris maintains

---

[1] Although RCW 71.24 has been amended since the time of trial, the changes do not affect the issues here.

[2] At least one commentator has raised a similar argument based on the statutory reference contained in former RCW 71.24.035(4)(h). *See* Comment, *The Psychotherapist–Patient Privilege in Washington: Extending the Privilege to Community Mental Health Clinics,* 58 Wash. L. Rev. 565 (1983).

that the statutory language is unambiguous and therefore determinative of legislative intent.[3]

The creation of a testimonial privilege is a recognized function of legislative power. *Cook v. King Cy.,* 9 Wn. App. 50, 52, 510 P.2d 659 (1973). Any grant of testimonial privilege, however, necessarily conflicts with the essential and inherent judicial power to compel the production of evidence. *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946). Consequently, statutory privileges in derogation of common law are strictly construed. *Department of Social & Health Servs. v. Latta,* 92 Wn.2d 812, 819, 601 P.2d 520 (1979).

Former RCW 71.24.035(4)(h) refers initially to the creation of an "information system" to be used by the State and counties, a system that includes a client–tracking method. One purpose of the client–tracking method is to permit DSHS to identify the participants in individual programs in order to implement accountability procedures mandated by federal funding. *See Peninsula Counseling, supra* (upholding disclosures pursuant to former RCW 71.24.035(4)(h) against privacy challenges brought by mental health facilities). The materials released by mental health facilities to the "information system" are limited; they do not include, for example, the patients' case history files. Consequently, the final sentence in former RCW 71.24.035(4)(h)—"Confidentiality of client information and records shall be maintained as provided in RCW 71.05.390 . . ."—arguably refers only to the materials provided by the various facilities for the information system. *Cf.* WAC 275–56–055(3).

Administrative regulations enacted pursuant to RCW 71.24, while imposing strict confidentiality requirements on licensed service providers, do not reflect the existence of a general testimonial privilege for mental health counselors. WAC 275–56–230 requires providers to maintain written policies pertaining to client rights. These policies are to

---

[3]Harris makes no claim that a common law privilege is involved.

address client rights to confidentiality, WAC 275–56–230(3)(e), as well as circumstances in which confidentiality is *not* maintained. WAC 275–56–230(4). Circumstances in which confidentiality is not maintained include "[w]here there is a clear threat to do serious bodily harm to self or others" and "[t]o a court under court order." WAC 275–56–230(4)(b), (c); *see also* WAC 275–56–240(3).

Strong confidentiality requirements do not necessarily create a testimonial privilege. *See Mebust v. Mayco Mfg. Co.,* 8 Wn. App. 359, 360, 506 P.2d 326 (1973). Courts in this state have consistently held that confidentiality requirements, standing alone, "do not restrict a superior court judge's inherent power to compel the production of evidence and the appearance of witnesses." *State v. Mark,* 23 Wn. App. 392, 395, 597 P.2d 406 (1979); *see also State v. Thompson,* 54 Wn.2d 100, 338 P.2d 319 (1959) (autopsy records); *State ex rel. State v. Church,* 35 Wn.2d 170, 211 P.2d 701 (1949) (welfare records); *State ex rel. Haugland v. Smythe, supra* (welfare records); *but see Folden v. Robinson,* 58 Wn.2d 760, 364 P.2d 924 (1961) (Legislature intended confidentiality requirement to create "rule of evidence"). Harris' claim rests solely on the bare reference in the CMHSA to RCW 71.05.390. Consequently, in light of the provisions of RCW 71.05 and 71.24 and the corresponding WAC regulations, the ambiguous nature of the bare statutory reference relied upon by appellant, the absence of any evidence of a legislative intent to create a new privilege, and the judicial reluctance to equate confidentiality requirements with testimonial privileges absent some clear expression of legislative intent, we decline to construe former RCW 71.24.035(4)(h) as creating a broad mental health counselor/client privilege.

Even if we were to agree that former RCW 71.24.035(4)(h) could be interpreted as creating a testimonial privilege, the trial court properly admitted Frady's testimony because there was no contention that the communications at issue here were intended to be confidential. The psychologist/client privilege does not apply in situations

"where it is manifest that the patient did not intend her communications to be confidential." *In re Henderson,* 29 Wn. App. 748, 752, 630 P.2d 944 (1981) (in termination proceeding, mother was aware that psychiatric examinations were being performed for specific purpose of providing third party with results); *see also In re Siegfried,* 42 Wn. App. 21, 708 P.2d 402 (1985). Harris made no claim that he believed the statements made to Frady, in the lobby of the building, would be confidential. As Frady indicated, clients were expressly informed that such incriminating statements would be disclosed.

Finally, Harris entered pleas of not guilty and not guilty by reason of insanity. At trial, Harris did not contest the fact that he committed the charged act. His sole witness, Dr. Coleman, testified that Harris had been unable to understand the nature of his acts at the time of the attack on Lay.

A defendant's NGI plea constitutes a waiver of the psychologist/client and physician/patient privileges. *See State v. Anderson,* 44 Wn. App. 644, 723 P.2d 464 (1986), *review dismissed,* 109 Wn.2d 1015 (1987); *see also State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983) (entry of NGI plea constitutes waiver of privilege against self–incrimination and psychologist/client privilege); *cf. State v. Tradewell,* 9 Wn. App. 821, 515 P.2d 172, *review denied,* 83 Wn.2d 1005 (1973), *cert. denied,* 416 U.S. 985 (1974).

Great latitude is allowed in the admission of evidence relevant to the issue of insanity. *State v. Bonds,* 98 Wn.2d 1, 21, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). The NGI plea renders admissible any evidence relevant to the defendant's mental condition. *Bonds,* at 22 (quoting *State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968), *cert. denied,* 393 U.S. 1096 (1969)). In such circumstances, the public interest in full disclosure outweighs the benefits of the privilege and "all available evidence of defendant's mental condition should be put before the jury." *Bonds,* at 21.

Under circumstances analogous to those here, we declined to follow the proscriptions of RCW 71.05.390(10) in a dependency proceeding, even though we acknowledged "no direct authority . . . allows [RCW 71.05.390] to be avoided in a dependency or termination proceeding." *In re Coverdell,* 39 Wn. App. 887, 892, 696 P.2d 1241, *review denied,* 102 Wn.2d 1009 (1984). In reaching this decision, we applied a balancing test and determined that records otherwise barred by RCW 71.05.390 were admissible in a dependency proceeding when the mother introduced evidence that she did not suffer from a mental disorder. A similar analysis is appropriate here.

In summary, we find no evidence of legislative intent in the CMHSA to create a broad mental health counselor/client testimonial privilege. Moreover, even if there were such a privilege, it either did not arise here or was waived.

Judgment affirmed.

COLEMAN, A.C.J., and GROSSE, J., concur.